**UNITED STATES COURT OF APPEALS**
**Tenth Circuit**
**Byron White United States Courthouse**
**1823 Stout Street**
**Denver, Colorado 80294**
**(303) 844-3157**

Patrick J.  Fisher, Jr.                                                      Elisabeth A. Shumaker
Clerk                                                             Chief Deputy Clerk

May 27, 1998

**TO:** ALL RECIPIENTS OF THE CAPTIONED OPINION

**RE:** 97-1025, *Maher v. Durango Metals, Inc.*
Filed May 19, 1998

The published opinion contains a clerical error.  On page one of the slip opinion, the names of counsel for the defendants-appellees should appear as follows:

Lindsay Taylor Thompson, Junker & Thompson, P.C., Seattle, Washington, (Edward E. Wolfe with him on the brief), for Defendants-Appellees.

A copy of the corrected opinion is attached for your convenience.

Sincerely,

Patrick Fisher, Clerk


By:
Keith Nelson
Deputy Clerk

**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 19 1998**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

WILLIAM J. MAHER,

        Plaintiff-Appellant,

v.

DURANGO METALS, INC., a Nevada
corporation; THAMES E. HARTLEY;
J. WAYNE TATMAN,

        Defendants,

and

COLINA ORO MOLINO, INC., also
known as COM, Inc., a Washington
corporation; GWEN FRASER,

        Defendants-Appellees.

No. 97-1025

---

Appeal from the United States District Court
for the District of Colorado
(D.C. No. 95-B-1849)

---

Florian Frederick Chess, Friedlob, Sanderson, Raskin, Paulson & Tourtillott,
LLC, Denver, Colorado, (Michael J. Norton and Herrick K. Lidstone, Jr. with him
on the brief), for Plaintiff-Appellant.

Lindsay Taylor Thompson, Junker & Thompson, P.C., Seattle, Washington,
(Edward E. Wolfe with him on the brief), for Defendants-Appellees.

Before **MURPHY, LOGAN,** and **HENRY***, Circuit Judges.

**MURPHY**, Circuit Judge.

Plaintiff William J. Maher appeals the district court's dismissal of his federal securities claims against Defendants Colina Oro Molino, Inc. ("COM") and Gwen Fraser. Maher argues that COM and Fraser are liable as "control persons" under § 15 of the Securities Act of 1933 ("1933 Act") and § 20(a) of the Securities Exchange Act of 1934 ("1934 Act") for various violations of the securities laws allegedly committed by Defendant Durango Metals, Inc. ("Durango"), the issuer of the relevant stock. The district court dismissed Maher's claims against COM and Fraser, concluding as a matter of law that Maher failed to establish that COM and Fraser were control persons of Durango. The district court also concluded that neither COM nor Fraser could be held primarily liable for alleged violations of § 12(a)(1) of the 1933 Act. This court exercises jurisdiction under 28 U.S.C. § 1291 and affirms.

***

*Chief Circuit Judge Seymour was originally a member of this panel but found it necessary to recuse herself after oral argument. By random selection, Circuit Judge Henry was assigned to replace her on the panel.

# I. BACKGROUND

Maher's securities claims originate from a failed $200,000 investment in Durango. In July 1995, Maher brought suit against the following parties, alleging various violations of federal and state securities laws: Durango; Tahmef ("Thames") Hartley, allegedly an officer and director of Durango; COM, allegedly a control person of Durango; Fraser, allegedly the sole or principal owner of COM and consequently a control person of Durango; and J. Wayne Tatman, allegedly Fraser's brother and an officer or employee of Durango and/or COM. Specifically, Maher alleged that Defendants violated § 10(b) of the 1934 Act and §§ 12(a)(1) and 12(a)(2)[1] of the 1933 Act. In addition, Maher brought a fraudulent misrepresentation claim and a claim alleging violations of the Colorado Securities Act.

Maher alleged in his Complaint that between October 1994 and March 1995, Hartley and Tatman made various misrepresentations and failed to inform him of material facts in order to induce him to invest in the common stock of Durango. Among other things, Maher alleged that Hartley and Tatman represented that they, along with Fraser and COM, were jointly involved in

---

[1]Section 12 claims are commonly referred to as either § 12(1) or § 12(2) claims. In 1995, however, Congress added another subsection to § 12. *See* Private Securities Litigation Reform Act of 1995, Pub. L. No. 104-67, § 105, 109 Stat. 737, 757 (codified at 15 U.S.C. § 77*l*). Therefore, § 12(1) and § 12(2) claims are now technically § 12(a)(1) and § 12(a)(2) claims.

Durango, which was a "good potential investment." Maher further alleged that in February and March 1995, he invested $200,000 in Durango for the purchase of 500,000 shares of common stock. Maher alleged that in June 1995, after being denied access to Durango's financial records and failing to receive a promised dividend, he repeatedly demanded a return of his investment, which he never received. Shortly thereafter, he filed this suit.

In response, Defendants filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court allowed Maher to amend his Complaint before ruling on Defendants' motion.[2] After a hearing on the Motion to Dismiss, the district court resolved as a matter of law that neither COM nor Fraser could be held liable as control persons for Durango's alleged violations of federal and state securities laws. The court therefore dismissed Maher's § 10(b), § 12(a)(1), § 12(a)(2), and state securities law claims[3] against COM and Fraser to the extent the claims were based on control person liability. The district court also concluded that neither COM nor Fraser could be held primarily liable under § 12(a)(1) because Maher failed to allege they were "sellers" of Durango stock

---

[2]All references to Maher's "Complaint" refer to his Amended Complaint.

[3]Maher has not appealed the dismissal of his claim alleging violations of the Colorado Securities Act.

and failed to identify any "financial interests of [the] defendants related to the sale."[4]

## II. DISCUSSION

This court reviews de novo the district court's dismissal under Rule 12(b)(6) for failure to state a claim. *See Witt v. Roadway Express*, 136 F.3d 1424, 1431 (10th Cir. 1998). We accept as true all well-pleaded facts, as distinguished from conclusory allegations, and view those facts in the light most favorable to the nonmoving party. *See id.* The district court's dismissal pursuant to Rule 12(b)(6) will be upheld only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### A. "Control Person" Liability

Maher first challenges the district court's dismissal of his § 10(b), § 12(a)(1), and § 12(a)(2) claims against COM and Fraser, arguing the court erred in its determination that neither COM nor Fraser were control persons of

---

[4]The district court also set forth an alternative ground for dismissing Maher's § 12(a)(2) claim against COM and Fraser. The court concluded the claim failed as a matter of law because Maher did not allege that his purchase of Durango stock was pursuant to a public offering or a prospectus. Because this court agrees with the district court's conclusion that neither COM nor Fraser are liable under § 12(a)(2) as control persons of Durango, we need not, and do not, address the court's alternative disposition of Maher's § 12(a)(2) claim.

Durango.  Under § 15 of the 1933 Act[5] and § 20(a) of the 1934 Act,[6] a person who controls a party that commits a violation of the securities laws may be held jointly and severally liable with the primary violator.[7]  This court has held that to state a prima facie case of control person liability, the plaintiff must establish (1) a primary violation of the securities laws and (2) "control" over the primary violator by the alleged controlling person.  *See First Interstate Bank v. Pring*, 969

---

[5]Section 15 of the 1933 Act provides:
> Every person who, by or through stock ownership, agency, or otherwise, or who, pursuant to or in connection with an agreement or understanding with one or more other persons by or through stock ownership, agency, or otherwise, controls any person liable under sections 77k or 77*l* of this title [sections 11 or 12], shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person had no knowledge of or reasonable grounds to believe in the existence of the facts by reason of which the liability of the controlled person is alleged to exist.

15 U.S.C. § 77o.

[6]Section 20(a) of the 1934 Act provides:
> Every person who, directly or indirectly, controls any person liable under any provision of this chapter or of any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable, unless the controlling person acted in good faith and did not directly or indirectly induce the act or acts constituting the violation or cause of action.

15 U.S.C. § 78t(a).

[7]Although worded differently, the control person provisions of § 15 and § 20(a) are interpreted the same.  *See First Interstate Bank v. Pring*, 969 F.2d 891, 897 (10th Cir. 1992), *rev'd on other grounds sub nom. Central Bank v. First Interstate Bank*, 511 U.S. 164 (1994).

F.2d 891, 897 (10th Cir. 1992), *rev'd on other grounds sub nom. Central Bank v. First Interstate Bank*, 511 U.S. 164 (1994); *accord Paracor Fin., Inc. v. General Elec. Capital Corp.*, 96 F.3d 1151, 1161 (9th Cir. 1996).  This court has expressly "reject[ed] those decisions that may be read to require a plaintiff to show the defendant actually or culpably participated in the primary violation."  *First Interstate Bank*, 969 F.2d at 897.  Rather, once the plaintiff establishes the prima facie case, the burden shifts to the defendant to show lack of culpable participation or knowledge.  *See id.*; *San Francisco-Okla. Petroleum Exploration Corp. v. Carstan Oil Co.*, 765 F.2d 962, 964 (10th Cir. 1985).

In *Richardson v. MacArthur*, 451 F.2d 35 (10th Cir. 1971), this court addressed "control" under § 20(a) and concluded: "'The statute is remedial and is to be construed liberally.  It has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a "controlling person" liable.'"  *Id.* at 41-42 (quoting *Myzel v. Fields*, 386 F.2d 718, 738 (8th Cir. 1967)).  The SEC's definition of "control" reflects this remedial purpose: "control" is defined as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise."  17 C.F.R. § 230.405.  In *First Interstate Bank*, this court cited the SEC's broad definition of "control" with approval, holding summary judgment in favor of the defendant

inappropriate when the defendant was in a position of at least indirect control over two companies which together controlled the primary violator. *See* 969 F.2d at 898.

In his Complaint, Maher alleged primary violations of § 10(b), § 12(a)(1), and § 12(a)(2). He thus satisfied the first element of his prima facie case. To establish the second element of his prima facie case, COM's and Fraser's control over Durango, Maher relies on the following factual allegations in his Complaint: (1) Fraser was the sister of Tatman, who Maher alleged was "an officer or employee of Defendant Durango Metals and/or Defendant Com, Inc." and the general manager of the Gold Hill Mill, owned by COM; (2) Fraser was the sole or principal owner of COM; (3) both COM and Fraser had access to information relating to Durango that was not available to the public; and (4) pursuant to a Memorandum of Contract dated June 23, 1994, COM purchased from Durango "a sufficient amount of outstanding stock to request a position on their Board of Directors" and "has the option to acquire [a] controlling interest" in Durango.

Viewing these allegations in the light most favorable to Maher, this court concludes that he has failed to plead sufficient facts establishing COM's control of Durango. Maher has not alleged that COM possessed even the power to

control Durango,[8] but rather that COM, by virtue of its agreement with Durango,

---

[8]This court recognizes there is a potential circuit split regarding whether, as part of a prima facie case of control person liability, a plaintiff must show that the alleged control person actually exercised control over the primary violator's general affairs or whether it is sufficient to show that the control person had the power to exercise such control. *Compare Metge v. Baehler*, 762 F.2d 621, 630-31 (8th Cir. 1985) (holding that to establish a prima facie case of control person liability, a plaintiff must establish that the alleged control person "actually participated in (*i.e., exercised* control over) the operations of the [primary violator] in general" (internal quotations omitted)) *and Harrison v. Dean Witter Reynolds, Inc.*, 974 F.2d 873, 881 (7th Cir. 1992) (applying Eighth Circuit's test) *with Brown v. Enstar Group, Inc.*, 84 F.3d 393, 396 & n.6 (11th Cir. 1996) (holding a defendant is liable as a control person if the defendant "had the power to control the general affairs of the entity primarily liable at the time the entity violated the securities laws" but declining to decide whether "power to control" means "simply abstract power to control, or actual exercise of the power to control" (internal quotations omitted)), *cert. denied*, 117 S. Ct. 950 (1997), *and Abbott v. Equity Group, Inc.*, 2 F.3d 613, 620 (5th Cir. 1993) (noting plaintiffs' argument that they need only show the alleged control persons possessed the "*power* to control [the primary violator], *not the actual exercise* of that power" but declining to analyze the distinction because plaintiffs could not even show power to control). Although perhaps disagreeing about whether a plaintiff must show actual control over the primary violator's general affairs, courts generally agree that the plaintiff need only show the power to control the transaction underlying the alleged securities violation and not the exercise of that power. *See Metge*, 762 F.2d at 631; *Harrison*, 974 F.2d at 881; *Brown*, 84 F.3d at 396 & n.5; *Abbott*, 2 F.3d at 619-20. *But see SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996) (stating that to establish a prima facie case of control person liability, a plaintiff must show that the alleged control person was "in some meaningful sense [a] culpable participant[] in the fraud perpetrated by [the] controlled person[]" (alterations in original) (internal quotations omitted)), *cert. denied*, 118 S. Ct. 57 (1997).

In this case, Maher alleged that COM and Fraser possessed only the ability to acquire the power to control Durango. The ability to acquire the power to control is necessarily one step removed from the power to control and two steps removed from the actual exercise of control. Because Maher's allegations are not sufficient to show that COM or Fraser possessed even the power to control

(continued...)

possessed only the ability *to acquire* that power. Notably, Maher has not alleged that COM threatened to exercise its rights under the Memorandum of Contract in an effort to control Durango. Maher has failed to cite any cases where control person liability was founded on such a tenuous connection between the alleged control person and the primary violator. Although this court recognizes that § 15 and § 20(a) are to be construed liberally, we are unwilling to stretch the boundaries of those provisions to the extent urged by Maher. Finally, though Maher correctly notes that the control person determination is a factual question not ordinarily subject to resolution on a motion to dismiss, dismissal is appropriate when, as in this case, a plaintiff does not plead any facts from which it can reasonably be inferred the defendant was a control person. *See, e.g.*, *Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 485-86 (6th Cir. 1992) (upholding dismissal under Rule 12(b)(6) because plaintiff failed to adequately allege control relationship); *Sloane Overseas Fund, Ltd. v. Sapiens Int'l Corp.*, 941 F. Supp. 1369, 1379 (S.D.N.Y. 1996) (dismissing control person claims under Rule 12(b)(6) even though plaintiff alleged that defendant corporation was a founder, creditor, and minority shareholder of the primary

---

[8](...continued) Durango, this court need not address whether a plaintiff must allege actual control of or simply the power to control the primary violator's general affairs in order to establish a prima facie case of control person liability.

violator, had a Vice President on the primary violator's board of directors, and was the underwriter for the relevant offering); *Food & Allied Serv. Trades Dep't, AFL-CIO v. Millfeld Trading Co.*, 841 F. Supp. 1386, 1391-92 (S.D.N.Y. 1994) (dismissing, with leave to amend, control person claim against defendant, who was a director of the primary violator, and noting inference that director possessed insider knowledge about primary violator is not sufficient to establish control relationship).

The allegations in Maher's Complaint are likewise insufficient to establish Fraser's control of Durango. Maher primarily relies on Fraser's ownership interest in COM to establish Fraser's alleged control of Durango. As discussed, the allegations are insufficient to support a reasonable inference that COM was a control person of Durango. Consequently, Fraser cannot be considered a control person of Durango solely by virtue of her ownership interest in COM. Maher also alleged that Fraser was the sister of Tatman, who was "an officer or employee of Defendant Durango Metals and/or Defendant Com, Inc." Alleging that a defendant is the sibling of an individual who may or may not be an officer or employee of the primary violator is not sufficient to confer control person status on that defendant.

Because Maher failed to allege facts from which it could reasonably be inferred that COM and Fraser were control persons of Durango, the district court

properly dismissed Maher's § 10(b), § 12(a)(1), and § 12(a)(2) claims against COM and Fraser, to the extent those claims were based on control person liability under § 15 or § 20(a).

**B.    Primary Liability Under § 12(a)(1)**

Maher next appears to argue the district court erred in dismissing his claims against COM and Fraser for primary liability under § 12(a)(1).[9]  Section 12(a)(1) imposes liability on any person who "offers or sells a security" in violation of the registration requirement of § 5.  *See* 15 U.S.C. § 77*l*(a)(1).  In *Pinter v. Dahl*, 486 U.S. 622 (1988), the Supreme Court concluded that § 12(a)(1) liability is not limited to the person who passes title to the securities, but extends "to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner."[10]  *Id.* at 647.

The district court concluded that because Maher failed to allege COM and Fraser were "sellers" of Durango stock and failed to identify any "financial interests of [the] defendants related to the sale," neither defendant could be held

_____

[9]It is unclear from Maher's brief whether he is arguing that COM and Fraser are liable under § 12(a)(1) only as control persons of Durango or whether he is also arguing they are primarily liable under that section.  This court has already concluded that neither COM nor Fraser may be held liable as control persons for Durango's alleged violations of § 12(a)(1).  We therefore construe Maher's second argument as one alleging primary liability under that section.

[10]The *Pinter* definition of a statutory seller under § 12(a)(1) has been applied to § 12(a)(2) as well.  *See, e.g., Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 635 (3d Cir. 1990).

primarily liable under § 12(a)(1).  Maher argues the district court dismissed his claim prematurely, depriving him of the opportunity to discover facts sufficient to satisfy the § 12(a)(1) test.

Maher does not contend that either COM or Fraser directly sold him the Durango stock.  Thus, to state a claim of primary liability against COM and Fraser, Maher must at a minimum allege facts indicating that COM and Fraser solicited his purchase of Durango stock.  *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 717 n.19 (3d Cir. 1996) ("An allegation of direct and active participation in the solicitation of the immediate sale is necessary for solicitation liability, i.e., where the section 12(2) defendant is not a direct seller.  Such an allegation is crucial so as to ensure a direct relationship between the purchaser and the defendant, without which a defendant is simply not a statutory seller." (citation omitted)).  Absent such an allegation, Maher is not entitled to proceed to discovery in an effort to uncover facts in support of his claim.

In his Complaint, Maher alleged no facts indicating that either COM or Fraser solicited his purchase of the Durango stock.  Rather, Maher alleged that Tatman and Hartley induced his purchase of the stock.  As a result, Maher failed as a matter of law to state a claim of primary liability against COM and Fraser under § 12(a)(1).  *Cf. Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1216 (1st Cir. 1996) (concluding dismissal of § 12(2) claim under Rule 12(b)(6) was appropriate

and stating that "bald and factually unsupported allegation that [the defendants] 'solicited' the plaintiffs' securities purchases is not, standing alone, sufficient"); *In re Worlds of Wonder Sec. Litig*, 694 F. Supp. 1427, 1435 (N.D. Cal. 1988) (dismissing, with leave to amend, § 12(2) claims because plaintiffs failed to allege facts demonstrating that defendants "solicited" the purchase of the relevant securities).

## III. CONCLUSION

This court upholds the district court's dismissal under Rule 12(b)(6) of Maher's § 10(b), § 12(a)(1), and § 12(a)(2) claims against COM and Fraser to the extent those claims are based on control person liability. We further uphold the district court's dismissal of Maher's § 12(a)(1) claim against COM and Fraser to the extent Maher alleges they were primarily liable under that section. The district court's order is therefore **AFFIRMED.**