**Dave SHELDON, Plaintiff,**

v.

**Jay VERMONTY, et al., Defendants.**

**No. 98–2277–JWL.**

United States District Court,
D. Kansas.

May 25, 1999.

Darren K. Kearns, Overland Park, KS, for Dave Sheldon, plaintiff.

Jane L Stafford, Patrick J. Whalen, Spencer, Fane, Britt & Browne, Kansas City, MO, Mario Aieta, New York City, for Jay Vermonty, Carmen Vermonty, Power Phone, Inc., Noah Steinberg, Gershon Tannenbaum, Dr. Enrique R. Carrion, T.M.C. Agroworld, Inc., Montecristi Group, Hector Cruz, defendants.

Jane L Stafford, Patrick J. Whalen, Spencer, Fane, Britt & Browne, Kansas City, MO, for Manhattan Transfer Registrar Company, Including all Directors and Officers, defendant.

John W. Shaw, Timothy S. Millman, Berkowitz, Feldmiller, Stanton, Brandt, Williams & Stueve, LLP, Kansas City, MO, for Olde Discount Corporation, Charles Schwab & Co., Inc., Principal Financial, Princeton Research, Inc., Jack Savage, defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is presently before the court on defendants' motion to dismiss plaintiff's third amended complaint (doc. 30). Specifically, defendants move to dismiss with prejudice plaintiff's complaint for failure to comply with the pleading requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendants' motion is granted in part and denied in part. Plaintiff's claims under the Securities Act of 1933, the Securities Exchange Act of 1934, and the Kansas Securities Act are dismissed with prejudice. Additionally, plaintiff's state law claims for fraud, breach of fiduciary duty, and civil conspiracy are also dismissed with prejudice. Plaintiff's claims for unjust enrichment and negligent misrepresentation are dismissed without prejudice.

## I. Introduction

On November 30, 1998, this court considered defendants Jay Vermonty, Carmen Vermonty, Gershon Tannenbaum and Hector Cruz's motion to dismiss plaintiff's amended complaint for failure to state a claim. With the exception of plaintiff's claim for unjust enrichment, each of plaintiff's claims was dismissed, with leave to amend, for failure to comply with the pleading requirements imposed by Rules 8 and 9(b) of the Federal Rules of Civil Procedure. Defendants Jay and Carmen Vermonty, Tannenbaum, and Cruz's current motion to dismiss concerns the claims set forth in plaintiff's third amended complaint.[1]

---

1. On January 8, 1999, plaintiff filed his second amended complaint (doc. 22), and on the

The facts alleged in plaintiff's complaint were related in some detail in the court's order of November 30, 1998 and will not be fully repeated here. *See Sheldon v. Vermonty*, 31 F.Supp.2d 1287 (D.Kan. November 30, 1998) ("November 30 Order"). In essence, this action arises from the alleged losses sustained by plaintiff after the Power Phone, Inc. ("Power Phone") stock in which he invested drastically declined in value. Plaintiff alleges that he was intentionally defrauded by moving defendants' false claims with respect to Power Phone's "sound financials," including the nature and extent of the company's assets. Plaintiff further alleges that defendants knowingly misrepresented as "done 'deals'" several business transactions involving Power Phone and various primarily agricultural producers and/or distributors when, according to plaintiff, defendants knew that such business transactions would "never come to fruition." Relying on defendants' alleged fraudulent "hyping" and "touting" of Power Phone's stock, plaintiff purchased additional shares.

Plaintiff alleges violations of the federal and state securities laws, common law fraud, negligent misrepresentation, breach of fiduciary duty, and civil conspiracy. Plaintiff claims damages exceeding $75,000.

## II. Legal Standard

Rule 8(a) of the Federal Rules of Civil Procedure sets forth the general pleading requirements: "[a] pleading which sets forth a claim for relief ... shall contain ... a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a).

Rule 9(b) governs special matters' pleading, including federal securities claims. Fed.R.Civ.P. 9(b). Rule 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *Id.* Rule 9(b)'s heightened pleading requirements serve to provide defendants adequate notice of the plaintiff's claim, to protect defendants from reputational damage caused by "improvident charges of wrongdoing," and to "inhibit the institution of strike suits." *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992) (quotation omitted). Despite the apparent inconsistency between Rule 9(b)'s "pleading with particularity" standard with respect to fraud or mistake and Rule 8(a)'s simple "notice" pleading directive, Rule 9(b) is to be read "in conjunction with the [notice] pleading requirements of Rule 8." *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986).

The court treats a dismissal for failure to plead fraud with sufficient particularity under Rule 9(b) according to the same standards as a Rule 12(b)(6) dismissal. *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 n. 5 (10th Cir.1997) (citing *Seattle–First Nat'l Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986)). Due to the fact-based inquiries often implicated by securities fraud actions, a motion to dismiss is often "difficult to obtain." *Id.* at 1118. "Nonetheless, courts do not hesitate to dismiss securities claims pursuant to 12(b)(6) ... where the plaintiff has failed to allege with particularity circumstances that could justify an inference of fraud under Rule 9(b)." *Id.*

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff

same day moved to join Charles Schwab & Company, Inc., Olde Discount Corporation, Principal Financial, and Princeton Research. On February 2, 1999, plaintiff's motion to join these defendants was granted and this third amended complaint followed. On May, 1, 1999, an amended joint stipulation and agreement to stay proceedings pending arbitration

of the dispute with respect to those claims asserted against defendants Charles Schwab, Olde, and Principal was filed by the parties. Nothing further has transpired concerning the claims against Princeton Research. Thus, the claims specific to those four defendants are not addressed here.

can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher*, 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Witt v. Roadway Express*, 136 F.3d 1424, 1428 (10th Cir. 1998). The issue in resolving a 12(b)(6) motion is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

### III. Defendants' Motion to Dismiss

#### A. Count V: Section 10(b) of the 1934 Act

■ Count V of plaintiff's third amended complaint alleges violations of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b). In its November 30 Order, the court stated that

[t]o establish liability under § 10(b) ..., plaintiff must allege that, in connection with the sale or purchase of securities, the defendant (1) made a false or misleading statement of material fact, or failed to state a material fact, (2) that the defendant acted with scienter, (3) that plaintiff relied on the misrepresentations, and (4) sustained damages as a proximate result of the inaccurate statement. *Farlow*, 956 F.2d at 986. Because a § 10(b) claim necessarily in-

volves allegations of fraud, a plaintiff is required to comply with Rule 9(b)'s heightened pleading requirements. November 30 Order at 5–6. The court further explained that although "Congress amended the Securities Exchange Act of 1934 by enacting the Private Securities Litigation Reform Act of 1995 (PSLRA)," November 30 Order at 6, because the Tenth Circuit has historically strictly enforced Rule 9(b)'s requirement that any alleged false or misleading statements be pleaded with sufficient particularity, "the PSLRA is unlikely to significantly alter Tenth Circuit jurisprudence with respect to pleading facts constituting the alleged fraud." *Id.* at 7. Thus, the court consulted Tenth Circuit caselaw decided prior to the PSLRA for guidance with respect to specificity with which alleged misrepresentations must be pleaded to survive a motion to dismiss. *Id.*

The court previously dismissed plaintiff's § 10(b) claim because plaintiff had failed to allege "*what* misrepresentations were made by the defendant, to *whom* these misrepresentations were made, *when* these misrepresentations were made, [and] *how* these misrepresentations furthered the alleged fraudulent scheme." November 30 Order at 7–8 (quoting *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 986 (10th Cir.1992)). Further, the court noted that plaintiff had wholly failed to allege that defendants had acted with an intent to deceive, commonly referred to as § 10(b)'s "scienter" requirement.

From what the court can ascertain from plaintiff's third amended complaint,[2] the statements constituting the alleged fraud include representations regarding the profitability of a merger between Power Phone and TMC Agroworld, Inc., repre-

---

**2.** The court notes that the allegations contained in plaintiff's third amended complaint concerning defendants' alleged fraudulent conduct are set forth in a somewhat less than coherent form. Thus, the court's ability to discern the precise allegations contained therein is considerably hindered, and the following summary of plaintiff's allegations rep-

resent the court's best efforts to apprehend the thrust of plaintiff's claims. Although the court is entitled to dismiss plaintiff's complaint for the sheer reason that it fails to set forth plaintiff's allegations in a clear and concise manner, *see* Fed.R.Civ.P. 8(a), the court declines to do so and instead rules on the merits of defendants' motion to dismiss.

sentations that Power Phone had acquired various properties and that each property would "bring" millions in revenue to the company and its shareholders, several communications stating that "deals" with banana, cigar, meat packing, lumber and urea companies were each confirmed and worth large amounts of money, and general statements regarding Power Phone's economic viability and strong potential for future success.[3] Plaintiff claims that, on several occasions between May 1996 and November 1997, these allegedly false statements were communicated to him personally over the telephone, posted on the "AOL message board" or contained in press releases apparently issued by defendants.

To his credit, in his third amended complaint, plaintiff partially cures the deficiencies for which this court previously dismissed his complaint by setting forth the dates on which allegedly false statements were made, and, for the most part, the speakers of those statements and the medium in which the statements were communicated (i.e., via press releases or by posting on computer "bulletin" boards). As before, however, plaintiff has failed to provide the court with any specific facts to indicate how or why the alleged misrepresentations were false. Instead, and as was true of his previous complaint, plaintiff merely states in a conclusory fashion that the information he received from the defendants was untrue. Indeed, the third amended complaint is riddled with unelaborated-upon phrases such as "[s]tock value increase not true," "[t]he asset information was false," "it all proved to be 'hype,'"

and "[t]his information was false." Under the federal securities laws, however, "mere conclusory allegations of falsity are insufficient." *Grossman*, 120 F.3d at 1124.

Moreover, it appears that many of plaintiff's allegations of falsity describe the phenomenon commonly referred to as "fraud by hindsight." *Grossman*, 120 F.3d at 1124. Fraud by hindsight occurs where plaintiffs, with the benefit of knowing the facts as they presently stand, assume that because the facts are not now as defendants predicted, defendants necessarily committed fraud. As noted by the Tenth Circuit,

> What makes many securities fraud cases more complicated is that often there is no reason to assume that what is true at the moment plaintiff discovers it was also true at the moment of the alleged misrepresentation, and that therefore simply because the alleged misrepresentation conflicts with the current state of facts, the charged statement must have been false.

*Id.* (quoting *In re GlenFed Securities Litig.*, 42 F.3d 1541, 1548–49 (9th Cir.1994) (en banc)). Thus, to distinguish inactionable "retrospective" fraud allegations from actionable securities fraud claims, "the plaintiff must set forth an explanation as to why the statement or omission complained of was false or misleading." *Id.* (citation omitted).

In this case, plaintiff has not adequately pleaded facts from which the court could infer that the allegedly false statements were known to be false when made. Instead, the complaint often uses phrases such as "plaintiff found out later this was

**3.** In their papers, defendants note that although plaintiff's third amended complaint refers to exhibits 1–6, stated as "attached and incorporated herein," no exhibits were attached to the third amended complaint received by defendants. According to the third amended complaint, those exhibits contain information representing some of the allegedly fraudulent statements conveyed to plaintiff by defendants. The copy of the third amended complaint filed with the court is also lacking any attached exhibits. Attached to plaintiff's amended complaint, originally dismissed by this court on November 30, 1998, are 24 exhibits numbered 1–A through 6–D, none of which appear to correspond with the "1 through 6" labeling system referred to in plaintiff's third amended complaint. Because the court has no access to the exhibits to which plaintiff's third amended complaint refers, it is unable to determine whether the information contained therein helps to support plaintiff's allegations.

not true," "all found to be not true because no 'deal' ever happened," "this verified information was later discovered to be fraudulent," and "[n]ot true this never happened," all of which indicate that it was not until after the fact that the circumstances rendered the statement retrospectively untrue.[4]

■ The court notes that, amongst plaintiff's factual allegations, the only two allegedly fraudulent statements that appear remotely actionable involve the Monte Cristi Lumber Corporation and the Santa Elena meat packing plant. In paragraph 18(g) of the third amended complaint, plaintiff alleges that

> On August 9, 1996, a business wire press release was given indicating "PP" has acquired Monte Cristi Lumber Corp [sic] with $19 million in assets and $200 million in revenue that was given as "fact." There was no Montecristi Lumber Corp. and no $200 million in revenue that was given as "fact."

Plaintiff does not, however, elaborate upon his allegation that Monte Cristi[5] Lumber Corporation was a non-existent business entity. Presumably, plaintiff must have *some* basis for his assertion that Monte Cristi did not exist, and was under this court's strict order to plead facts indicat-

ing how or why any alleged fraudulent information received was false. In any event, even if a mere allegation that the Monte Cristi company simply "did not exist" were sufficient for purposes of Fed. R.Civ.P. 9(b), plaintiff has pleaded no facts to indicate that any of the defendants were aware of the company's non-existence at the time the announcement of Power Phone's acquisition of Monte Cristi was issued.[6]

■ The same is true with respect to plaintiff's allegations regarding the Santa Elena meat packing plant.[7] In paragraph 22(b), plaintiff alleges that

> On January 9, 1997, a business wire press release by TMC announces a $7 million line of credit for their customer, International food, presented as 'fact.' This builds on the fraud that the Santa Elena Meat Processing Plaint [sic] is real when in fact it had been closed for years and it would require millions of dollars to take it over from Argentina's government....

Plaintiff states no basis for his allegation that the plant was, in fact, closed, nor any facts from which the court could infer that defendants knew of the plant's inoperable status even if that were the case.

---

4. For instance, it is entirely possible that, at the time plaintiff was informed that each allegedly false business transaction was consummated, defendant Vermonty was holding a signed contract in his hand and fully believed that the contract was, in plaintiff's words, a "done 'deal.'"

5. Although plaintiff refers to the lumber company alternately as "Monte Cristi" and "Montecristi," the court assumes that only one lumber company is in question. Because it appears that plaintiff more often uses the former spelling, the court adopts the more frequently used spelling.

6. In the same paragraph, plaintiff alleges that "[t]hen in 1997 [Power Phone] indicates that an audit done in September 1996 shows the $20 million asset does not exist." The court first notes that the Monte Cristi company was, two sentences earlier, alleged to possess

$19 million in assets, not $20 million, so it is somewhat unclear whether the audit to which plaintiff refers is in fact linked to the Monte Cristi company. More importantly, however, plaintiff does not allege when the alleged audit occurred, or who was privy to the information contained therein, such that no reasonable inference can be made that defendants knew that, at the time that the acquisition of Monte Cristi was announced, Monte Cristi did not hold $20 (or $19) million in assets.

7. The court notes that plaintiff seems to refer to a "deal" with International Food Packers and the non-existence of the Santa Elena Meat packing plant interchangeably. The court therefore assumes that the transactions with International Food Packers and the Santa Elena plant are one and the same, and that the allegations relating thereto concern the same course of events.

Additionally, as was true of plaintiff's previous amended complaint, plaintiff's third amended complaint fails to allege with particularity defendants' intent to deceive, or "scienter."[8] With the exception of sweeping allegations that "most if not all of the statements given concerning assets and done 'deals' were known to be false when made by defendants," plaintiff's complaint is devoid of facts giving rise to an inference, strong or otherwise, that the defendants acted with the requisite state of mind.

Accordingly, due to plaintiff's failure to fulfill the pleading requirements necessary to state a claim under § 10(b) of the Securities Exchange Act of 1934, Count V is dismissed with prejudice.

### B. Count I: Sections 12(a)(1) and 12(a)(2) of the 1933 Act

Count I of plaintiff's complaint alleges violations of §§ 12(a)(1) and 12(a)(2) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77l(a)(1) and (a)(2).[9] The court addresses each alleged violation in turn.

#### 1. Section 12(a)(1) Violation

Section 12(a)(1) of the Securities Act imposes liability for the offer or sale of unregistered securities required to be registered pursuant to § 5 of the Securities Act, 15 U.S.C. § 77e. 15 U.S.C. § 77l(a)(1).

■ To the extent that Count I of plaintiff's third amended complaint purports to allege a § 12(a)(1) violation, the court concludes that plaintiff has failed to adequately plead facts from which the court can infer that the securities purchased by plaintiff were sold in violation of § 5 of the Securities Act. Instead, Count I merely alleges, in a conclusory fashion, that the securities were not properly registered. Furthermore, according to the Supreme Court, the language of § 12(a)(1) "[a]t the very least ... contemplates a buyer-seller relationship not unlike traditional contractual privity." *Pinter v. Dahl,* 486 U.S. 622, 642, 108 S.Ct. 2063, 100 L.Ed.2d 658 (1988). Plaintiff has not alleged from which of the moving defendants he purchased the allegedly unregistered securities anywhere in the complaint. As a result, the court cannot begin to determine whether any of the moving defendants is a "seller" within the meaning of § 12.

More importantly, even if the complaint were sufficient to allege a claim under § 12(a)(1), section 13 of the 1933 Act, 15 U.S.C. § 77m, provides that actions to enforce a liability created under § 12(a)(1) must be brought within one year after the violation upon which it is based, and in no event more than three years from the date the security was offered to the public. 15 U.S.C. § 77m. Therefore, the limitations period began on the date that plaintiff alleged that a violation of § 12(a)(1) occurred, *i.e.* April 21, 1997, the date of plaintiff's last purchase of Power Phone stock. Plaintiff did not file his original complaint until June 19, 1998, however, over one year after the date of his last purchase of Power Phone stock.[10] Thus,

---

8. As the court noted in its November 30 Order, "[t]he PSLRA requires plaintiff to plead specific 'facts giving rise to a strong inference that the defendant acted with the required state of mind.'" November 30 Order at 11 (quoting 15 U.S.C. § 78u–4(b)(2)).

9. As recently noted by the Tenth Circuit,

 Section 12 claims are commonly referred to as either § 12(1) or § 12(2) claims. In 1995, however, Congress added another subsection to § 12. See Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, § 105, 109 Stat. 737, 757 (codified

at 15 U.S.C. § 77l). Therefore, § 12(1) and § 12(2) claims are now technically § 12(a)(1) and § 12(a)(2) claims.
 *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1303 (10th Cir.1998).

10. The court notes that although in paragraph 31, plaintiff states that the last purchase occurred on April 21, 1997, paragraph 23(c) states that an additional 6,500 shares were purchased on April 23 and 24, 1997. Whether the last purchase date was April 21, 1997, or three days later is unimportant, of course, because in either situation, the complaint was

plaintiff's § 12(a)(1) claim is time-barred and subject to dismissal with prejudice.

### 2. Section 12(a)(2) Violation

■ Section 12(a)(2) of the Securities Act prohibits the offer or sale of securities on the basis of materially false or misleading statements contained in a prospectus or oral communication. 15 U.S.C. 77l(a)(2).

With respect to plaintiff's § 12(a)(2) claim, the court concludes that it, too, must be dismissed. In its previous order, the court stated that, according to the Supreme Court, actions under § 12(a)(2) are limited to public offerings of stock. November 30 Order at 14 (citing *Gustafson v. Alloyd,* 513 U.S. 561, 571, 115 S.Ct. 1061, 131 L.Ed.2d 1 (1995)). Although plaintiff, in his memorandum in opposition to plaintiff's motion to dismiss, insists that his complaint *clearly* alleges that plaintiff purchased his stock in an initial public offering, the court disagrees.

Paragraph 40(a) of plaintiff's third amended complaint alleges, in pertinent part:

> The appropriate defendants' [sic] failed to make a proper '33 Act registration for the initial public offering of the "merger" between TMC and the "shell" of [Power Phone] as required for this specific situation (Merger; Shell) when no legitimate exemption applied. . . .

Plaintiff has alleged no facts from which this court could infer that this alleged "merger" between TMC and Power Phone was required to be registered, or that the sale of stock subsequent to the merger was offered in an initial public offering. Plaintiff's failure to plead sufficient facts to support an inference that such a violation occurred is fatal to his § 12(a)(2) claim. Accordingly, plaintiff's § 12(a)(2) claim is dismissed with prejudice.

filed over one year after the last alleged pur-

### C. Count II: Sections 12 and 13 of the 1934 Act

■ Count II purports to allege violations of §§ 12 and 13 of the Exchange Act, 15 U.S.C. §§ 78*l* and 78m. No private right of action exists under either of these sections, however. In response to defendants' motion to dismiss on this basis, plaintiff merely claims that this count should survive "based upon the implied private right of action" plaintiff alleges exists under these subsections of the 1934 Act. In light of plaintiff's failure to refer the court to any authority to support his proposition that a private right of action is properly implied under these specific sections, and because plaintiff was expressly admonished in the court's previous order to carefully ascertain the precise legal basis for each of his claims before submitting any further papers with this court, Count II of plaintiff's third amended complaint is hereby dismissed with prejudice.

### D. Counts III and IV: Controlling Person Liability

Although Counts III and IV are based on violations of § 15 of the Securities Act, 15 U.S.C. § 77o, and § 20(a) of the Exchange Act, 15 U.S.C. § 78t(a), respectively, the court will address both of plaintiff's control person claims at once because, "[a]lthough § 15 and § 20(a) are not identical, the controlling person analysis is the same." *First Interstate Bank of Denver v. Pring,* 969 F.2d 891, 897 (10th Cir.1992), *rev'd on other grounds, Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994).

■ In order to establish a prima facie case of control person liability, the plaintiff must present evidence from which a reasonable fact finder could conclude that (a) a primary violation of the securities laws occurred; and (b) the defendant controlled the person or entity committing the primary violation. *Id.* Accordingly, be-

chase.

cause the court concludes that plaintiff has failed to adequately plead primary violations under either the Securities Act or the Exchange Act, Counts III and IV alleging controlling person liability under § 15 of the Securities Act and § 20(a) of the Exchange Act are likewise dismissed, with prejudice.

### E. Claims for which Diversity Jurisdiction May Lie

 In the federal system, there are two bases of original jurisdiction: (1) federal question jurisdiction, and (2) diversity of citizenship jurisdiction in which the amount in controversy exceeds $75,000. *See* 28 U.S.C. §§ 1331, 1332. Because plaintiff has failed to adequately plead violations under federal law, such that his claims thereunder are dismissed with prejudice, no federal question jurisdiction exists in this case. In the event that the court finds no basis for plaintiff's federal securities claims, plaintiff argues that the court should retain jurisdiction over his remaining claims on the basis of diversity jurisdiction.

Pursuant to 28 U.S.C. § 1332, diversity jurisdiction lies where complete diversity of citizenship exists between the parties and the matter in controversy exceeds $75,000. 28 U.S.C. § 1332. There is no dispute that complete diversity of citizenship is present here: indeed, all moving defendants are citizens of New York, and plaintiff is a domiciliary of Kansas. Thus, if plaintiff's state law claims exceed the $75,000 jurisdictional threshold, diversity jurisdiction exists.

In his papers, plaintiff argues that in the absence of federal question jurisdiction, diversity jurisdiction exists with respect to his remaining state claims. Although the sum total of plaintiff's actual damages arising from his investment loss is alleged to be $38,722.89, plaintiff's complaint alleges that the amount in controversy exceeds the threshold jurisdictional requirement of $75,000.

The damages claimed exceed the actual damages attributable to Power Phone stock's decreased value, plaintiff contends, and thus this court may properly exercise diversity jurisdiction over plaintiff's state law claims, because plaintiff is entitled to "utiliz[e] attorney fees and punitive damages to meet the dollar amount requirement." Plaintiff refers the court to K.S.A. § 17–1268(a) which provides, in pertinent part:

> Any person who offers or sells a security in violation of K.S.A. 17–1254 or 17–1255 or offers or sells a security by means of any untrue statement of a material fact ... is liable to the person buying the security from such person, who may sue either at law or in equity to recover the consideration paid for the security, ... costs, and reasonable attorney fees....

Kan.Stat.Ann. § 17–1268(a). Plaintiff contends that his potential claim for attorney's fees pursuant to § 17–1268(a) may be used to satisfy the amount-in-controversy requirement.

The court agrees that attorney's fees may be included in the damage calculation for purposes of diversity jurisdiction when a right to such fees is provided by statute. *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 ("The Supreme Court has long held that when a statute permits recovery of attorney's fees a reasonable estimate may be used in calculating the necessary jurisdictional amount....") (citing *Missouri State Life Ins. v. Jones*, 290 U.S. 199, 54 S.Ct. 133, 78 L.Ed. 267 (1933)).

 Similarly, with respect to plaintiff's claims for common law fraud, breach of fiduciary duty, and common law conspiracy, plaintiff contends that the $75,000 jurisdictional threshold is met because he is entitled to claim punitive, in addition to compensatory, damages. The court agrees and, because diversity jurisdiction exists with respect to plaintiff's Kansas Securities Act and common law fraud claims, therefore considers the merits of defendants' motion to dismiss Counts VI, IX, X, XI, and XII of plaintiff's complaint,

labeled Kansas Securities Act, "Fraud: By Promise of Future Events, [sic] and Misrepresentation," "Fraud: By Silence and Omission," breach of fiduciary duty, and common law conspiracy, respectively.

### 1. Counts VI, IX, and X: Kansas Securities Act and Common Law Fraud Claims

 As stated in the November 30 Order, although arising under Kansas law, plaintiff's state statutory securities fraud claims, as well as his claims for common law fraud, must satisfy the pleading requirements of Fed.R.Civ.P. 9(b). November Order at 15–16; *see generally Seattle–First Nat'l Bank v. Carlstedt,* 800 F.2d 1008, 1010 (10th Cir.1986) ("in this circuit, the particularity requirement of Rule 9(b) is applicable generally in securities fraud cases"). Because plaintiff's Kansas Securities Act and common law fraud claims as outlined in the third amended complaint fail to plead the events allegedly constituting the fraud with particularity, Counts VI, IX and X are dismissed, with prejudice, for failure to comply with Fed.R.Civ.P. 9(b).

### 2. Count XI: Breach of Fiduciary Duty

 Count XI of the complaint alleges that

Plaintiff placed a special trust and confidence (invested $50,000 in this 'scam') in Jay Vermonty, Gershon Tannenbaum, Noah Steinberg and Dr. Carrion to offer legitimate information because of their alleged credentials and experience in this type of business and in equity and good conscience defendants' [sic] were bound to act in good faith and with due regard for the interests of plaintiff.

Plaintiff further claims that "Noah Steinberg was alleged to be an attorney, Mr. Carrion was alleged to be affiliated with the United Nations," and for these reasons, apparently, "[p]laintiff believed for almost 18 months that he was in good hands and made the conscious assumption

that he was dealing with professionals in the industry."

In its previous order, the court advised plaintiff that "[u]nder Kansas law, '[a] fiduciary relation ... exist[s] in cases where there has been a special confidence reposed in one who, in equity and good conscience, is bound to act in good faith and with due regard to the interests of the one reposing the confidence.'" Order at 19–20 (quoting *Denison State Bank v. Madeira,* 230 Kan. 684, 692, 640 P.2d 1235, 1241 (1982)). The court further noted that "[t]he Tenth Circuit has recognized that "conscious assumption of the alleged fiduciary duty is a mandatory element under Kansas law." Order at 20" (quoting *Rajala v. Allied Corp.,* 919 F.2d 610, 615 (10th Cir.1990)).

The court concludes that, as set forth in plaintiff's third amended complaint, plaintiff's claim for breach of fiduciary duty fails to cure the pleading defects for which it was previously dismissed on November 30, 1998. Plaintiff has not alleged that any of the moving defendants consciously assumed the role of fiduciary with respect to plaintiff's affairs. Indeed, one does not become a fiduciary merely because another unilaterally places "a special trust and confidence" in him or her. Thus, the court finds that plaintiff has, once again, failed to allege any facts from which the court can infer the existence of a fiduciary duty, or a breach thereof. Accordingly, Count XI is dismissed with prejudice.

### 3. Count XII: Common Law Conspiracy

 In its previous order, this court explained that to state a claim for civil conspiracy under Kansas law, a plaintiff must allege facts sufficient to establish the following five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Vetter v. Morgan,* 22 Kan.App.2d 1, 8, 913 P.2d 1200

(1995) (citing *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 927, 811 P.2d 1220, 1226 (1991)). The court further noted that in Kansas, a civil conspiracy claim is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. *See Mays*, 248 Kan. at 927, 811 P.2d at 1226.

 The court concludes that plaintiff has failed to remedy the original inadequacies of his complaint with respect to his civil conspiracy claim, and thus that plaintiff has failed to state a claim therefor under Kansas law. Specifically, plaintiff has failed to allege facts sufficient to support the "meeting of the minds" and "unlawful overt act" elements of a conspiracy claim. Instead, plaintiff advances only conclusory allegations that "an agreement to defraud was consummated by several individuals due to the substantial fraudulent information that was provided to plaintiff and the confidential information (stock ownership information) passed between defendants in this fraudulent scheme, which was done for profit" and that "[t]his conspiracy has been effectuated and furthered by various means and methods." Plaintiff does not, however, plead any facts to support his theory that the various defendants agreed to commit the wrongs alleged.

More importantly, however, because plaintiff has failed to adequately allege facts to support a claim against defendants for their alleged fraudulent activity, and because the only "wrong independent of the alleged conspiracy" discernable from plaintiff's third amended complaint is defendants' alleged fraudulent activity, plaintiff's third amended complaint necessarily fails to plead facts sufficient to establish the "unlawful overt acts" element of a civil conspiracy claim. Accordingly, because plaintiff has alleged no facts indicating that any defendant engaged in concerted action with any other defendant to accomplish an unlawful act, defendants' motion to dismiss Count XII is granted, and plaintiff's claim for civil conspiracy is dismissed with prejudice.

## F. Claims for which No Basis of Federal Subject Matter Jurisdiction Exists

 With respect to plaintiff's claims for unjust enrichment and negligent misrepresentation, however, the court concludes that no basis for subject matter jurisdiction exists. Indeed, plaintiff's claims for unjust enrichment and negligent misrepresentation are not brought pursuant to any statute, and thus plaintiff cannot rely on a statutory provision for the collection of reasonable attorney's fees to meet the jurisdictional threshold of $75,000. Furthermore, because "[s]imple negligence, standing alone, will not support an award of punitive damages," *Johnson v. Geer Real Estate Co.*, 239 Kan. 324, 329, 720 P.2d 660, 664 (1986), punitive damages are unavailable with respect to plaintiff's claim for negligent misrepresentation.

In its previous order, the court allowed plaintiff's claim for unjust enrichment to survive defendants' motion to dismiss, stating that "[t]he court assumes that plaintiff alleges unjust enrichment in the amount of $75,000, but is unable to ascertain whether that conclusion is correct because plaintiff has failed to state otherwise in his claim for unjust enrichment." Order at 17. The court was willing to make that assumption at the time because it was permitting the plaintiff to amend, thereby preserving the possibility of supplemental jurisdiction even if original jurisdiction were lacking. *See* 28 U.S.C. § 1367(a). Because that is no longer the case, the court must scrutinize plaintiff's complaint more closely and cannot merely assume the viability of his damage averment.

 Plaintiff's third amended complaint fails to delineate the precise amount for which plaintiff claims defendants were unjustly enriched, but because a claim for unjust enrichment is itself a claim for restitution of the benefit conferred upon another, *see generally Home Bank & Trust*

*Co. v. Cedar Bluff Cattle Feeders, Inc.,* 25 Kan.App.2d 152, 159, 959 P.2d 934, 939 (1998), it is necessarily limited to the amount of money conferred upon defendants. Because the only amount allegedly transferred from plaintiff to defendants cannot possibly exceed $ 50,000,[11] the total price allegedly paid for plaintiff's shares of Power Phone stock, plaintiff's claim for unjust enrichment does not meet the $75,000 jurisdictional threshold.

In the absence of any separate jurisdictional basis for his common law claims for negligent misrepresentation and unjust enrichment, the court, in its discretion, declines to reach the merits of defendants' motion to dismiss with respect to· these claims. *See* 28 U.S.C. § 1367(c)(3); *Smith v. City of Enid,* 149 F.3d 1151, 1156 (10th Cir.1998) ("When ·all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims."). Accordingly, Counts VII and VIII are ·dismissed without prejudice.

### G. Plaintiff's Superfluous Filings

On April 16, 1999, plaintiff filed a brief entitled "Plaintiff's Reply Motion in Further Support of His Motion in Opposition to Defendants [sic] Motion to Dismiss" (doc. 57) and on May 5,. 1999, filed an additional brief captioned "Plaintiff's Supplemental Reply Motion in Further Support of His· Motion in Opposition to Defendants [sic] Motion to Dismiss and Request for Leave To Supplement" (doc. 60).

District of Kansas Rule 7.1 allows only for the filing of motions, responses, and replies. Thus, because no provision for the filing of surreplies is found in the local rules · of this court, plaintiff must seek leave of court prior to filing any such

surreply with the court. Because plaintiff did not request or receive such leave, this court need not address the issues raised in plaintiff's surreplies. *See Romig v. City of Iola,* 34 F.Supp.2d 1265, 1267 n. 1 (D.Kan. Dec.11, 1998).

Out of an abundance of caution, however, the court has read the papers improperly filed by plaintiff, and finds that nothing in them alters the conclusion that the dismissal of plaintiff's claims is proper. The first surreply merely reiterates plaintiff's contention that his third amended complaint should not be dismissed, adding the comment that "[w]e know Jay Vermonty read the ˙ Complaint because of his threats to Steve Page." The court is unaware of Mr. Page's identity, or of any basis to conclude that the alleged threats against him somehow support plaintiff's claim that his third amended complaint should not be dismissed.

Plaintiff's second surreply attaches what appear to be the findings of an SEC administrative proceeding, in which two accountants unrelated to the current action were found to have unethically evaluated the value of art and computer software apparently claimed as assets on behalf of Power Phone. With the exception of plaintiff's conclusory statement that "[t]he SEC has now verified that Power Phone/ TMC Argoworld [sic]/DCGR/ [sic] has claimed assets that they do not own," plaintiff has failed to explain how the SEC findings have any bearing on the outcome of the case at bar. Accordingly, the court deems the issues raised in plaintiff's surreplies to be wholly irrelevant to the motion currently before the court. Thus, the court grants defendants' motion to dismiss, despite the issues raised in plaintiff's surreplies.

---

**11.** The court notes that by its calculations, the amount invested by plaintiff in Power Phone, Inc. does not reach the $50,000 figure asserted in paragraph 50(a) of his complaint, which states that plaintiff "invested $50,000 in this 'scam.' " Nonetheless, the court will use this figure for purposes of calculating the theoretical value of plaintiff's unjust enrichment

claim. Moreover, for purposes of determining whether plaintiff's unjust enrichment claim meets the $75,000 jurisdictional threshold, the court assumes that defendants actually pocketed the purchase price of plaintiff's stock, although this is not discernable from the complaint itself, and is unlikely to be true.

### H. Leave to Amend

 Plaintiff asks this court to grant him additional leave to amend his complaint if the court does not conclude that the third amended complaint passes muster. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). The decision to grant leave to amend a complaint lies within the sound discretion of the trial court. *Viernow v. Euripides Devel. Ass'n,* 157 F.3d 785, 799 (10th Cir.1998).

The court concludes that, at this juncture, granting plaintiff leave to amend would be futile. In its November 30 Order, this court carefully explained the pleading defects present in plaintiff's complaint, and issued detailed instructions concerning the manner in which plaintiff would be required to amend his complaint so as to survive a second motion to dismiss. The court also warned plaintiff that failure to amend his complaint in the manner directed would result in dismissal with prejudice.

Although plaintiff amended his complaint, the third amended complaint verges on a virtually incomprehensible document from which this court can barely determine the substance of plaintiff's claims. Due to the unimproved nature of plaintiff's third amended complaint, the court has no reason to believe that allowing plaintiff an additional opportunity to amend the complaint would cure the numerous defects which permeate his pleading. In light of the resources necessary to be expended by defendants, as well as by this court, in any attempt to decipher the purported wrongs complained of, the court is simply unwilling to afford the plaintiff yet another chance to articulate a viable theory. Accordingly, plaintiff's request for leave to amend is denied and the claims against the moving defendants which are set forth in the complaint are dismissed.

**IT IS THEREFORE ORDERED BY THE COURT** that defendants' motion to dismiss with prejudice plaintiff's third amended complaint (doc. 30) is granted in part and denied in part. Specifically, Counts I, II, III, IV, V, VI, IX, X, XI, and XII are dismissed with prejudice. Counts VII and VIII are dismissed without prejudice.

**IT IS SO ORDERED.**