PAS COMMUNICATIONS, INC.; Quality Transfer, Inc.; 1A Rob Moving; Reliable Maintenance, Inc.; K.E. Johnson Consultants, Inc.; and Riteway Magic Supply Company, Inc., Plaintiffs,

v.

**U.S. SPRINT, INC., Defendant.**

**No. 99–2182–JWL.**

United States District Court, D. Kansas.

July 6, 2000.

Rebecca S. Yocum, Morrison & Hecker L.L.P., Overland Park, KS, Nimrod T. Chapel, Jr. Garrett M. Hodes, Humphrey, Farrington & McClain, Independence, MO, Christopher D Matchett, Matchett, Verbois, Futrell and Henchy, P.L.C., Baton Rouge, LA, D. Robert Webster, Neil E. Lucas, David K. Lee, Timothy E. Peterson, Bamberger & Feibleman, Indianapolis, IN, for plaintiffs.

Randall E. Hendricks, Lawrence A. Rouse, David J. Rempel, Rouse, Hendricks, German, May & Shank, Kansas City, MO, for defendant.

1. Two related motions are also before the court—defendant's motion to strike plaintiffs' memorandum in opposition to defendant's resubmitted motion to dismiss (doc. # 90) and plaintiff's motion to file response to defendant's motion to strike out of time (doc. # 106). The court will not attempt to summarize here the procedural history of this case, a history which developed while this case was pending before another judge of this district and which is the basis of defendant's motion to strike. Suffice it to say that the previous judge ordered the parties to "resubmit" their initial briefing on defendant's motion to dismiss. Defendant resubmitted their briefing verbatim, while plaintiffs used the opportunity to present additional arguments and authorities.

In analyzing the merits of defendant's motion to strike, the court has considered plaintiffs' response and, thus, grants plaintiffs' motion to file their response out of time. Because Judge Murguia expressly ordered the parties to "resubmit" their initial briefing, the motion to strike is granted. Based solely on the parties' original briefing, the court concludes that dismissal of plaintiffs' Title VI and section 1981 claims is inappropriate and that dismissal of plaintiffs' antitrust claim is warranted. Moreover, even if the court were to consider plaintiffs' supple-

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

Plaintiffs, several minority-owned businesses, allege that defendant intentionally denied plaintiffs on the basis of race subcontracting opportunities in connection with defendant's various projects. In that regard, plaintiffs allege that defendant interfered with plaintiffs' civil rights in violation of 42 U.S.C. §§ 1981 and 2000d (Title VI of the Civil Rights Act of 1964). Plaintiffs further allege that defendant conspired with others to boycott plaintiffs' services in violation of Section 1 of the Sherman Anti–Trust Act, 15 U.S.C. § 1.

This matter is presently before the court on defendant's motion to dismiss (doc. # 51) for failure to state a claim upon which relief may be granted pursuant to Fed.R.Civ.P. 12(b)(6).[1] As set forth in more detail below, the court grants in part and denies in part defendant's motion; the motion is granted with respect to plaintiffs' antitrust claim and is otherwise denied.[2]

mental briefing on their antitrust claim, the court would nonetheless conclude that dismissal of this claim is appropriate.

2. In its motion to dismiss, defendant also moves to strike certain allegations in plaintiffs' complaint in the event that plaintiffs' claim are not dismissed. In that regard, defendant highlights a number of allegations in the complaint that, according to defendant, are "immaterial, impertinent and scandalous." See Fed.R.Civ.P. 12(f). As Judge Vratil of this district recently summarized:

> Rule 12(f) motions are a generally disfavored, drastic remedy. A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may prejudice one of the parties. If the record reveals any doubt as to whether under any contingency a certain matter may raise an issue, the Court should deny the motion. If plaintiffs plead evidentiary facts that aid in giving a full understanding of the complaint as a whole, they need not be stricken.

See Miller v. Pfizer, Inc., No. Civ.A. 99–2326–KHV, 1999 WL 1063046, at *3 (D.Kan. Nov.10, 1999) (citations omitted). Bearing these principles in mind, the court has reviewed the challenged allegations and con-

## I. Applicable Legal Standard

Defendant moves to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6). The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, *Maher,* 144 F.3d at 1304, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Witt v. Roadway Express,* 136 F.3d 1424, 1428 (10th Cir.), *cert. denied,* 525 U.S. 881, 119 S.Ct. 188, 142 L.Ed.2d 153 (1998). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). With these principles in mind, the court turns to defendant's motion.

## II. Plaintiffs' Section 1981 Claim

In their complaint, plaintiffs allege that defendant violated plaintiffs' right to make and enforce contracts pursuant to 42 U.S.C. § 1981. Specifically, plaintiffs claim that defendant has intentionally denied plaintiffs on the basis of race subcontracting opportunities in connection with defendant's contracts. Defendant maintains that this claim must be dismissed because plaintiffs have failed in their complaint to identify any specific contracts that defendant allegedly denied them. In the alternative, defendant moves for a more definite statement of plaintiffs' section 1981 claim pursuant to Federal Rule of Civil Procedure 12(e). As set forth below, the court denies defendant's motion to dismiss plaintiffs' section 1981 claim and denies defendant's request for a more definite statement. The proper tool for eliciting additional detail with respect to the contracting opportunities allegedly denied plaintiffs by defendant is the discovery process.

█ In connection with their section 1981 claim, plaintiffs allege that defendant "annually contracts billions of dollars to vendors such as plaintiffs;" that defendant is a "beneficiary of numerous federal contracts and recently executed a contract with the Federal government believed to be in excess of Six Billion Dollars;" that defendant is currently involved in the construction of its world headquarters, a project "with a proposed budget believed to be in excess of Six Hundred and Sixty Million Dollars"—less than .005% of which has gone to African American contractors; that defendant "routinely" withholds bid information and bid opportunities from potential African American contractors on the basis of race; that plaintiffs have sought and been denied on the basis of race the opportunity to enter into contracts with defendant; and that contracting opportunities were routinely made available to majority-owned companies.

These allegations are sufficient to withstand a motion to dismiss under the federal rules. *See* Fed.R.Civ.P. 8(a)(2) (pleading need only set forth "a short and plain statement of the claim showing that the pleader is entitled to relief"); *see also Edwards & Assocs., Inc. v. Black & Veatch, L.L.P.,* 84 F.Supp.2d 1182, 1192 (D.Kan.2000) (discussing prima facie elements for section 1981 claim in connection with denial of contracting opportunities). The purpose of "fact pleading" as provided by Rule 8(a)(2) "is to give the defendant fair notice of the claims against him without requiring the plaintiff to have every legal theory or fact developed in detail before the complaint is filed and the par-

cludes that defendant has failed to meet the requirements of Rule 12(f).

ties have opportunity for discovery." *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1091 (10th Cir.1991). Considering a somewhat analogous argument under the Railway Labor Act, the Supreme Court has held:

> The respondents also argue that the complaint failed to set forth specific facts to support its general allegations of discrimination and that its dismissal is therefore proper. The decisive answer to this is that the Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. The illustrative forms appended to the Rules plainly demonstrate this. Such simplified 'notice pleading' is made possible by the liberal opportunity for discovery and the other pretrial procedures established by the Rules to disclose more precisely the basis of both claim and defense and to define more narrowly the disputed facts and issues. Following the simple guide of Rule 8(f) that 'all pleadings shall be so construed as to do substantial justice,' we have no doubt that petitioners' complaint adequately set forth a claim and gave the respondents fair notice of its basis.

*See Conley v. Gibson*, 355 U.S. 41, 47–48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In short, the court, after reviewing plaintiffs' complaint in light of the applicable pleading requirements, is convinced that plaintiffs have adequately pled a claim under section 1981 and that defendant has received fair notice of that claim.

As should be evident from the foregoing, the court also rejects defendant's argument that plaintiffs should be required to provide a more definite statement under Federal Rule of Civil Procedure 12(e). Rule 12(e) provides that "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement." The situations in which making a Rule 12(e) motion is appropriate are very limited and, as a result, such motions are infrequently granted. 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1377 (2d ed.1990). Under the circumstances presented here, the court cannot conclude that plaintiffs' complaint is "so vague or ambiguous" that defendant "cannot reasonably be required to frame a responsive pleading." Additional detail with respect to plaintiffs' section 1981 claim should be elicited through the discovery process. *See Schmidt v. Shawnee Mission School Dist.*, No. Civ.A. 98–2377–GTV, 1998 WL 892662, at *1 (D.Kan. Dec.16, 1998) (denying motion for more definite statement; "Courts expect parties to pursue discovery for details beyond those required by Rule 8 for pleadings."); *Audiotext Communications Network, Inc. v. U.S. Telecom, Inc.*, Civ. A. No. 94–2395–GTV, 1995 WL 36543, at *5 (D.Kan. Jan.9, 1995) (denying motion for more definite statement; "If more information is required, defendant has the full panoply of discovery methods available to it.").

## III. Plaintiffs' Title VI Claim

In addition to their section 1981 claim, plaintiffs allege in their complaint that defendant violated their rights under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et al., to be free from intentional discrimination "under any program or activity receiving Federal financial assistance," *see id.* § 2000d. Specifically, plaintiffs claim that defendant has intentionally denied plaintiffs on the basis of race various subcontracting opportunities in connection with defendant's federal contracts. Defendant contends that plaintiffs' Title VI claim must be dismissed because the federal contracts referenced in plaintiffs' complaint do not constitute "federal financial assistance" within the meaning of Title VI

and because defendant as a whole is not subsidized by federal funds. As set forth below, the court concludes that plaintiff is entitled to the benefit of discovery on the issue of whether defendant receives federal financial assistance within the meaning of Title VI and, accordingly, denies defendant's motion with respect to plaintiffs' Title VI claim.

Title VI of the Civil Rights Act of 1964 bans discrimination based upon race, color or national origin "under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In order to establish a Title VI violation, then, a plaintiff must prove that he or she has been subjected to discrimination on the basis of race or national origin and that the entity engaging in discrimination is receiving federal financial assistance. *See Baker v. Board of Regents of Kansas,* 991 F.2d 628, 631 (10th Cir.1993). Although the Tenth Circuit has not analyzed the meaning of the phrase "federal financial assistance" in the context of Title VI, it has analyzed the meaning of that phrase in the analogous context of section 504 of the Rehabilitation Act.[3] In *DeVargas v. Mason & Hanger– Silas Mason Co.,* the Tenth Circuit applied the "ordinary meaning" of the phrase and concluded that "an entity receives federal financial assistance when it receives a subsidy." 911 F.2d 1377, 1382 (10th Cir.1990). Specifically, the Circuit counseled that courts, in determining whether an entity receives "federal financial assistance," should focus on the "intention of the government" to give a subsidy as opposed to the intention of the government to provide compensation. *See id.* Based on these principles, the vast majority of courts have held that government procurement contracts do not constitute federal financial assistance within the meaning of the civil

rights laws. *See, e.g., Jacobson v. Delta Airlines, Inc.,* 742 F.2d 1202, 1209 (9th Cir.1984) (Title VI not intended to apply to government procurement contracts); *Tolliver v. Xerox Corp.,* 918 F.2d 1052, 1060 (2d Cir.1990) (Rehabilitation Act properly dismissed because receipt of government procurement contracts did not constitute federal financial assistance); *Brown v. Sibley,* 650 F.2d 760, 769 (5th Cir.1981) (federal financial assistance does not include government procurement contracts).

In their complaint, plaintiffs allege that defendant receives federal financial assistance in various forms, including subsidies. *See* Complaint ¶ 36. Nonetheless, defendant urges that dismissal is appropriate because plaintiffs' complaint alleges discrimination only with respect to various government procurement contracts—contracts that simply do not constitute "federal financial assistance" within the meaning of Title VI and contracts that plaintiffs do not even allege constitute federal financial assistance. In other words, defendant maintains that plaintiffs must allege discrimination in connection with the specific program that receives federal funds. Defendant's argument is based on the "program specificity" requirement of Title VI. *See DeVargas,* 911 F.2d at 1383–84.

■ In 1988, however, Congress enacted the Civil Rights Restoration Act ("Restoration Act"). The Restoration Act effectively overturned the program-specificity requirement as developed in several Supreme Court decisions. *See id.* (discussing legislative history and purpose of the Restoration Act). The Restoration Act modified Title VI so that it encompasses programs or activities of a recipient of federal financial assistance on an institu-

---

3. Section 504 of the Rehabilitation Act prohibits discrimination against handicapped persons by "any program or activity receiving federal financial assistance" and was patterned after Title VI. *See Pushkin v. Regents of the Univ. of Colo.,* 658 F.2d 1372, 1379 (10th Cir.1981) ("Section 504 was patterned after and is almost identical to the anti-discrimina-

tion language of [Title VI] of the Civil Rights Act of 1964."); *accord School Board of Nassau County v. Arline,* 480 U.S. 273, 278 n. 2, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987) ("Congress' decision to pattern § 504 after Title VI is evident in the language of the statute ... and in the legislative history of § 504").

tion-wide basis. *See* 42 U.S.C. § 2000d–4a. With respect to corporations, Title VI defines "program or activity" to include "all the operations of ... an entire corporation ... if assistance is extended to such corporation as a whole." *See id.* § 2000d–4a(3)(A)(i). In light of this amendment, plaintiffs' failure to allege discrimination in connection with the specific program receiving federal funds is not fatal to their Title VI claim. *See Quinn v. National Railroad Passenger Corp.,* No. 97–C–3529, 1997 WL 790738, at *5 (N.D.Ill.Dec.18, 1997) (In light of Restoration Act's amendment to Title VI, "the fact that the [plaintiffs'] complaint is bereft of specific allegations as to the nature and extent of [federal] funding does not render their Title VI claim legally insufficient").

While defendant acknowledges that Congress has overturned the program-specificity requirement under Title VI, it nonetheless argues that the amendment does not apply to it because federal financial assistance has not been extended to it "as a whole." While the truth of this assertion may ultimately be demonstrated, it is simply not persuasive or even relevant at this juncture. In their complaint, plaintiffs allege that defendant receives "federal financial assistance subject to institution-wide coverage" under Title VI. Accepting this allegation as true (as the court is compelled to do at this stage of the proceedings), the court concludes that plaintiffs have stated a claim under Title VI. *See id.* (where complaint simply alleged that defendant was "a recipient of federal financial assistance," allegations were sufficient to state a claim under Title VI; court denied defendant's 12(b)(6) motion). Moreover, the vast majority of courts faced with the issue of whether an entity receives federal financial assistance within the meaning of the civil rights laws have concluded that the resolution of the issue requires inquiry into factual matters outside the complaint and, accordingly, is a matter better suited for resolution after both sides have conducted discovery on the

issue. *See, e.g., Shepherd v. United States Olympic Committee,* 94 F.Supp.2d 1136, 1146–47 (D.Colo.2000) (denying defendant's motion for summary judgment and allowing plaintiff the benefit of discovery on the issue of whether defendant receives federal financial assistance sufficient to trigger section 504); *Communities for Equity v. Michigan High School Athletic Ass'n,* 26 F.Supp.2d 1001, 1008 (W.D.Mich. 1998) (plaintiffs entitled to discovery on issue of whether defendant receives federal financial assistance within the meaning of Title IX); *Bowers v. National Collegiate Athletic Ass'n,* 9 F.Supp.2d 460, 492 (D.N.J.1998) (plaintiff entitled to discovery on the nature of federal contracts and existence of any subsidies); *Gazouski v. City of Belvidere,* No. 93–C–20157, 1993 WL 515858, at *3 (N.D.Ill.Dec.13, 1993) (determination of whether defendant receives federal financial assistance is "better suited for resolution after both sides have had time for discovery on the issue"); *Gonzalez v. Development Assistance Corp.,* No. 88–0191–LFO, 1989 WL 205634, at *3 (D.D.C. June 21, 1989) (plaintiff entitled to discovery on issue of whether defendant, at the relevant time, was a recipient of federal financial assistance within the meaning of section 504); *Bellamy v. Roadway Express, Inc.,* 668 F.Supp. 615, 618 (N.D.Ohio 1987) (question of whether entity receives federal financial assistance "ordinarily cannot be resolved on a motion for judgment on the pleadings"); *see also Squire v. United Airlines, Inc.,* 973 F.Supp. 1004, 1009 (D.Colo.1997) (characterizing as "sound" plaintiffs' argument that they should be allowed to conduct discovery on the issue of whether defendant received federal financial assistance for purposes of section 504, but granting summary judgment to defendant on separate ground in any event). For the foregoing reasons, the court denies defendant's motion to dismiss plaintiffs' Title VI claim.

## IV. Plaintiffs' Anti–Trust Claim

Finally, plaintiffs allege in their complaint that defendant and U.S. West, Inc.,

another telecommunications provider, "engaged in a conspiracy to boycott the plaintiffs in an effort to limit their participation in contracting opportunities available from both U.S. West and defendant, and punish [plaintiffs] for attempting to change the status quo in the industry by enforcing their civil rights." Defendant seeks dismissal of this claim on a variety of grounds. Specifically, defendant maintains that dismissal of plaintiffs' antitrust claim is warranted because plaintiffs have failed to allege in their complaint that the purported conspiracy "unreasonably restrains trade in the relevant market;" the alleged conduct is noncommercial and, thus, is outside the scope of the antitrust laws; the alleged conduct does not constitute a violation of section 1 under the rule of reason or per se analysis; and plaintiffs have failed to allege facts sufficient to establish the existence of "antitrust injury." As set forth below, the court finds the issue of antitrust injury to be dispositive and, thus, declines to address defendant's remaining arguments.

 To recover damages for an antitrust violation,[4] a private plaintiff must show more "than injury causally linked to an illegal presence in the market." *See Full Draw Productions v. Easton Sports, Inc.*, 182 F.3d 745, 750 (10th Cir.1999) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489, 97 S.Ct. 690, 50 L.Ed.2d 701 (1977)). Rather, the plaintiff

must prove antitrust injury, which is to say injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful. The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.

*Id.* (quoting *Brunswick Corp.*, 429 U.S. at 489, 97 S.Ct. 690). It is not enough that a

plaintiff alleges that it is in a worse position than it would have been had the defendant not committed the acts about which the plaintiff complains. *See Brunswick*, 429 U.S. at 486, 97 S.Ct. 690. Such a minimal requirement would "divorce[ ] antitrust recovery from the purposes of the antitrust laws," which were "enacted for the protection of *competition*, not *competitors*." *Id.* at 487–88, 97 S.Ct. 690; *accord Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 339, 110 S.Ct. 1884, 109 L.Ed.2d 333 (1990).

Applying this standard to the allegations set forth in plaintiffs' complaint, the court concludes that plaintiffs have failed adequately to allege antitrust injury. In reaching this conclusion, the court is guided by the Second Circuit's opinion in *Eastway Construction Corp. v. City of New York*, 762 F.2d 243 (2d Cir.1985)—one of only a handful of cases the court has uncovered addressing the issue of antitrust injury in a factual setting sufficiently analogous to that alleged by plaintiffs in their complaint. In *Eastway Construction*, the plaintiff, a general contractor that for many years was engaged in the construction of publicly financed housing rehabilitation projects in New York City, was denied access to certain redevelopment projects sponsored or approved by the City of New York. *See* 762 F.2d at 245–46. By way of background, between 1966 and 1974, the City of New York, through its now defunct Municipal Loan Program, loaned a total of nearly twelve million dollars to limited partnerships controlled by various principals of Eastway. *Id.* at 246. The low-interest loans were given to enable the partnerships to rehabilitate thirty-four multiple dwellings in depressed neighborhoods. *Id.* Eastway served as general contractor on most of the projects. *Id.* The majority of the loans were non-recourse, and were secured by mortgages on the buildings. *Id.* Eastway was the gener-

---

4. Section 4 of the Clayton Act creates a private cause of action for any person who has been "injured in his business or property by reason of anything forbidden in the antitrust laws," and provides for treble damages. *See Full Draw Productions v. Easton Sports, Inc.*, 182 F.3d 745, 750 (10th Cir.1999) (citing 15 U.S.C. § 15(a)).

al contractor on most of the projects. *Id.* By 1981, the loans were in arrears in the total amount of nearly eight million dollars. *Id.* By 1983, all but three of the buildings that had secured the loans had reverted to City ownership through mortgage foreclosure or *in rem* taking. *Id.* The three remaining buildings had mortgage arrears totaling approximately three million dollars. *Id.*

During the early 1970s, the Municipal Loan Program was "rocked by a well-publicized scandal." *Id.* One City official was convicted of extortion and accepting bribes, and several developers were charged with fraud. *Id.* Eastway's President, George Jaffee, admitted making payments to the official in charge of the Municipal Loan Program during this period in an attempt to expedite pending loan applications. *Id.*

Shortly thereafter, the State of New York revamped its Private Housing Finance Law and created the New York City Housing Development Corporation. *Id.* Pursuant to the statutory scheme in operation at that time, the City was given supervisory authority over certain redevelopment projects, including authority to create and operate redevelopment companies and the authority to control the firms with which those redevelopment companies contracted. *Id.*

In light of the Municipal Loan Program scandal, the City decided it would no longer enter into rehabilitation contracts with firms whose principals controlled companies that had defaulted on or were in arrears with respect to loans received from the City. *Id.* In 1980, the policy was extended to forbid companies under City supervision from entering into contracts with firms that had defaulted or that were in arrears. *Id.* Because Eastway's principals controlled entities that had defaulted on City loans, Eastway was precluded from contracting with companies that were engaged in City-financed reconstruction projects. *Id.* In effect, Eastway was put out of business. *Id.*

Eastway filed suit against the City of New York and others alleging, *inter alia,* violations of section 1 of the Sherman Anti–Trust Act. *See id.* at 248. The district court granted summary judgment for the defendants on Eastway's antitrust claims. *See id.* On appeal, the Second Circuit affirmed the district court's decision, concluding that Eastway's complaint "wholly fail[ed] to make out a viable claim under the antitrust laws." *See id.* at 250. Focusing on the issue of antitrust injury, the court reasoned:

> Even if Eastway was excluded from the relevant market, and even if its exclusion was the result of a "contract, combination or conspiracy" between the City and [another defendant], such action could not possibly have injured competition. Indeed, Eastway does not even allege anticompetitive effect. In plain fact, neither the City nor [the other defendant] in their roles as mortgage lenders stood to gain from the inhibition of competition among general contractors.
>
> If Eastway's antitrust complaint were deemed to state a claim, every joint decision to hire one contractor over another—whether based on reputation, price, past performance, etc.—would be assailable under the Sherman Act. Although in each such case the rejected contractor would undoubtedly be unhappy, such a result would pervert the intent of those who drafted the antitrust laws.

*Id.* at 251 (footnote omitted).

■ The court finds the reasoning of *Eastway Construction* persuasive and applies it to the allegations in plaintiffs' complaint. Those allegations, taken as true, establish that defendant contacted one of its own competitors, U.S. West, and that the two companies, in an effort to "punish" plaintiffs for asserting their rights under the civil rights laws, agreed that plaintiffs would not be given subcontracting opportunities with defendant or U.S. West. Ac-

cording to plaintiffs, this conduct has rendered plaintiffs unable to compete further in the relevant market, a market that the plaintiffs define as the "subcontracting opportunities provided by Sprint and U.S. West." As the Seventh Circuit has noted in a somewhat analogous context, however, it simply makes no sense to define the market in such terms. *See Ehredt Underground, Inc. v. Commonwealth Edison Co.,* 90 F.3d 238, 240 (7th Cir.1996) (contractor that filed antitrust suit against electric utility after contractor found itself unable to perform contract to provide trenching services to utility did not suffer antitrust injury where contractor remained free to sell to other buyers of trenching services; "It would not make sense to speak of 'the market in trenches dug for Commonwealth Edison.'") Despite defendant's alleged refusal to deal with plaintiffs, each plaintiff remains free to sell its particular services to other buyers. Moreover, there is no argument (and indeed, plaintiffs do not attempt to make one) that defendant received any economic benefit or competitive edge by refusing to deal with plaintiffs. This fact is what distinguishes the case before the court from the principal case upon which plaintiffs rely in support of their antitrust claim—*Organization of Minority Vendors, Inc. v. Illinois Central Gulf Railroad,* 579 F.Supp. 574 (N.D.Ill.1983). There, the excluded plaintiffs were in competition with some of the defendants. *See id.* at 579, 601. The same certainly cannot be said here; there is no allegation or suggestion that Sprint or U.S. West competes in any way with any plaintiff. *Cf. Full Draw Productions v. Easton Sports, Inc.,* 182 F.3d 745, 751–53 (10th Cir.1999) (plaintiff adequately alleged antitrust injury in part because alleged boycott involved direct competitor of plaintiff). In short, plaintiffs have wholly failed to allege facts sufficient to support a showing of antitrust injury. For the foregoing reasons, defendant's motion to dismiss plaintiffs' antitrust claim is granted.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss plaintiffs' first amended complaint (doc. # 39) is **granted in part and denied in part.** Defendant's motion to strike plaintiffs' memorandum in opposition to defendant's resubmitted motion to dismiss (doc. # 90) is **granted;** plaintiffs' motion for leave to file out of time response to defendant's motion to strike (doc. # 106) is **granted.**

**IT IS SO ORDERED.**