Robert C. CARSON, individually, Robert C. Carson Revocable Trust, by and through its CoTrustees Robert C. Carson and June M. Carson, Carson Communications, L.L.C., and Carson Consulting, Plaintiffs,

v.

LYNCH MULTIMEDIA CORPORATION, Lynch Interactive Corporation, Mario J. Gabelli, Robert E. Dolan, Robert A. Hurwich, and Mary J. Carroll, Defendants.

No. 00–2131–JWL.

United States District Court, D. Kansas.

Nov. 3, 2000.

Robert O. Lesley, Joan K. Rowland, Stinson, Mag & Fizzell, P.C., Kansas City, MO, for plaintiffs.

Kenneth E. Holm, Boddington & Brown, Chtd., Kansas City, KS, Jeff C. Spahn, Jr., Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., for Wichita, KS, Lynch Multimedia Corp., Lynch Interactive Corp., defendants.

Jeff C. Spahn, Jr., Martin, Pringle, Oliver, Wallace & Swartz, L.L.P., Wichita, KS, Michael Thompson, Brian D. Martin, Blackwell Sanders Peper Martin LLP, Kansas City, MO, for Mario J. Gabelli, Robert E. Dolan, Robert A. Hurwich, Mary J. Carroll, defendants.

## MEMORANDUM AND ORDER

LUNGSTRUM, District Judge.

This matter is before the court on defendants Robert Dolan, Robert Hurwich, Mary Carroll, Lynch Interactive Corporation and Lynch Multimedia Corporation's

motion to dismiss for failure to state a claim (Doc. 22), and defendant Mario Gabelli's separate motion to dismiss for failure to state a claim (Doc. 25). For the reasons set out below, both motions are denied.

## I. Standards

The court will dismiss a cause of action for failure to state a claim only when it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1304 (10th Cir.1998), or when an issue of law is dispositive. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir.2000). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

## II. Background

CLR Video, L.L.C. ("CLR") is a Kansas limited liability company created in July, 1995 by Lynch Multimedia Corporation ("Lynch Multimedia"), Rainbow Corporation ("Rainbow") and the Robert C. Carson Revocable Trust ("Carson Trust"). Pursuant to the CLR operating agreement, Lynch Multimedia holds a 60% interest in CLR and Rainbow and the Carson Trust both hold a 20% interest. The CLR operating agreement provides that CLR shall be managed by a five member Board of Managers, with Lynch Multimedia appointing three members and Rainbow and Carson Trust each appointing one member. The three members appointed by Lynch Multimedia were defendants Robert Dolan, Robert Hurwich and Mary Carroll.

Plaintiff Robert Carson served as the president and general manager of CLR. Pursuant to a management agreement entered into on April 1, 1999 between CLR and Carson Communications, Carson Communications retained CLR as the manager of its business.

On April 12, 1999, Lynch Multimedia filed a lawsuit against Carson Communications, the Carson Trust and Robert Carson alleging that the defendants breached their fiduciary duties to CLR by taking a business opportunity belonging to CLR without first offering it to CLR. In November, 1999, the CLR board of managers terminated Robert Carson as president and general manager of CLR and replaced him with Mary Armstrong. In December, 1999, Ms. Armstrong terminated the joint management agreement, effective January 1, 2000. Subsequently, CLR relocated and severed its ties with Carson Communications.

Plaintiffs filed their First Amended Complaint ("Complaint") on June 12, 2000. In Count I, the complaint alleges that defendants Dolan, Hurwich and Carroll breached their fiduciary duties as board members by terminating the management agreement, terminating Mr. Carson as president and general manager, severing CLR ties with Carson Communications, and failing to pay Mr. Carson. Count I further alleges that defendant Mario Gabelli, as president of Lynch Interactive Corporation ("Lynch Interactive"), held a "position of influence" over the three directors appointed by Lynch Multimedia and, therefore, owed a fiduciary duty to CLR which he breached by influencing the three defendant board members to take the actions alleged not to be in the interest of CLR. Count II of the complaint alleges that Mr. Carson and CLR entered into a contract providing that Mr. Carson was to serve as president of CLR until September 1, 2002 and that Mr. Carson was to be paid $2,000 per month in compensation for that position. According to the complaint, Mr. Gabelli was aware of this contract and

intentionally "exercised improper pressure and influence over the decision making process of the managers and procured CLR's breach" of the contract. Count III of the complaint makes the same allegation of tortious interference with contract in relation to the management agreement and vehicle lease agreement between CLR and Carson Communication.

Count IV of the complaint alleges that Lynch Multimedia, as a majority owner of CLR, owed a fiduciary duty to the Carson Trust to "act in good faith and with due regard to the interests of CLR and its Members." The complaint alleges that Lynch Multimedia breached that duty by terminating the management agreement, terminating Mr. Carson as president and general manager, severing CLR's ties with Carson Communications, and failing to pay Mr. Carson. Count V alleges that defendants Dolan, Hurwich, Carroll and Gabelli entered into a civil conspiracy to "attempt to harm the plaintiffs because of the dispute between the parties" over whether a business opportunity was first offered to CLR before it was taken by Carson Communications.

According to the complaint, Lynch Interactive and Mr. Gabelli published false and defamatory statements about Mr. Carson in the 1999 Annual Report of Lynch Interactive. Based on the annual report, count VI pleads that Lynch Interactive and Mr. Gabelli committed the tort of defamation, Count VII pleads that they committed the tort of negligent defamation, and Count VIII pleads that they committed the tort of false light publicity.

### III. Defendant Mario Gabelli's motion to dismiss

#### A. Count I, breach of fiduciary duty

The complaint alleges that Mr. Gabelli owes a fiduciary duty to CLR because the managers appointed by Lynch Multimedia acted "at the behest of Mr. Gabelli" and

Mr. Gabelli occupied a "position of influence over the Managers." The complaint also alleges that all three directors are employees of Lynch Interactive and that Mr. Gabelli is Chairman of the Board and Chief Executive Officer of Lynch Interactive.

Mr. Gabelli argues that the facts pled in the complaint, if true, do not show that Mr. Gabelli owed a fiduciary duty to CLR. The plaintiffs respond by citing this court's opinion in *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.*, 910 F.Supp. 543, 546 (D.Kan.1995), defining a fiduciary relationship as "any relationship of blood, business, friendship, or association in which one of the parties reposes special trust and confidence in the other who is in a position to have and exercise influence over the first party" and arguing that Mr. Gabelli had a fiduciary relationship with CLR because of his influence over or control of the decisions made by the majority of the CLR board of managers.

In *Denison State Bank v. Madeira*, the Kansas Supreme Court explained that "[t]he concept of the fiduciary duty is an equitable one and while no precise definition may be given and strict parameters of the relationship cannot be established for use in all cases, there are certain broad general principles which should be considered in making the determination of whether a fiduciary relationship exists in any particular factual situation." 230 Kan. 684, 691, 640 P.2d 1235 (1982). The court then listed the principles to consider in determining whether a fiduciary relationship should be implied in law: [1]

■ A fiduciary relationship imparts a position of peculiar confidence placed by one individual in another. A fiduciary is a person with a duty to act primarily for the benefit of another. A fiduciary is in a position to have and exercise, and does have and exercise influence over another.

---

1. The court explained that a fiduciary duty may be implied in law "due to the factual situation surrounding the involved transactions and the relationship of the parties to each other and to the questioned transactions." *Denison,* 230 Kan. at 691, 640 P.2d 1235.

A fiduciary relationship implies a condition of superiority of one of the parties over the other. Generally, in a fiduciary relationship, the property, interest or authority of the other is placed in the charge of the fiduciary. 230 Kan. at 691–92, 640 P.2d 1235.

■ At the pleading stage, this court cannot say that it is "beyond a doubt" that plaintiffs cannot prove a set of facts to establish a fiduciary relationship in accordance with their allegations. If, as the complaint alleges, Mr. Gabelli influenced or controlled the majority of the board of managers then Mr. Gabelli may well have exercised influence over or control of CLR. For this reason, the trust and confidence placed in the managers and the duty of the managers to act solely for the benefit of CLR might be imputed to Mr. Gabelli. If the majority of the board was simply the alter ego of Mr. Gabelli, Mr. Gabelli should not be able to hide behind the board managers and claim that the managers alone, and not Mr. Gabelli, owed the fiduciary duty. Under the principles set out in *Denison*, Mr. Gabelli's alleged influence over or control of the majority of the board and CLR is sufficient to permit plaintiffs to go forward in their attempts to prove an implied fiduciary relationship between Mr. Gabelli and CLR.[2]

Mr. Gabelli also argues that Count I asserts a derivative claim and that the Carson Trust's failure to comply with Rule 23.1, specifically the demand requirement, means that the claim should be dismissed. The plaintiffs respond by arguing that Lynch Multimedia oppressed the Carson Trust and that this constitutes an individual, not a derivative, cause of action. The plaintiffs also argue that, to the extent that Count I asserts a derivative cause of action, the close corporation exception to the demand requirement applies.

■ In *Richards v. Bryan*, the Kansas Court of Appeals explained when a claim is derivative:

A claim is said to be derivative if injury is either to the corporation directly or to the shareholder but mediated through the corporation. A shareholder may only litigate as an individual if the wrong to the corporation inflicts a distinct and disproportionate injury on the shareholder, or if the action involves a contractual right of the shareholder which exists independently of any right of the corporation. "Whether a cause of action is individual or derivative must be determined from the 'nature of the wrong alleged' and the relief, if any, which could result if plaintiff were to prevail."

*Richards*, 19 Kan.App.2d at 961, 879 P.2d 638 (citations omitted). Count I alleges that Gabelli, defendants Dolan, Hurwich and Carroll breached their fiduciary duties to the Carson Trust by terminating the management agreement, terminating Mr. Carson as president and general manager, severing CLR ties with Carson Communications, and failing to pay Mr. Carson. The complaint alleges that theses decisions were not in the financial interest of CLR. The complaint does not allege that the Carson Trust suffered a disproportionate injury. Count I, therefore, asserts a derivative cause of action because the harm alleged was to CLR and not directly to the

---

2. In his reply, Mr. Gabelli points to this court's decisions in *Edwards & Assocs., Inc. v. Black & Veatch, L.L.P.*, 84 F.Supp.2d 1182 (D.Kan.2000), and *Sheldon v. Vermonty*, 53 F.Supp.2d 1157 (D.Kan.1999), as precedent showing that the plaintiffs have not stated a claim for breach of fiduciary duty. In *Edwards*, this court explained that a plaintiff cannot "unilaterally impose a fiduciary relationship on another without a conscious assumption of such duties by the one sought to be held liable as a fiduciary." *Edwards*, 84 F.Supp.2d at 1199 (citing *Denison State Bank v. Madeira*, 230 Kan. 684, 691, 640 P.2d 1235 (1982)). Likewise, in *Sheldon*, this court held that the defendants did not become fiduciaries merely because the plaintiff unilaterally placed special trust and confidence in them. The complaint alleges that Mr. Gabelli intentionally influenced or controlled the votes and actions of a majority of the board of managers. The *Edwards* and *Sheldon* decisions are, therefore, inapplicable because Mr. Gabelli voluntarily assumed a position of power over CLR.

Carson Trust. 19 *Fletcher Cyclopedia on the law of Private Corporations* § 5:06 (1988) ("actions brought for breach of a director's or officer's fiduciary duty will generally be derivative actions unless the plaintiff can show some special injury which is not common to all shareholders, such as that the injury to plaintiff arose out of plaintiff's relationship to the transaction complained of other than as a shareholder, for example, as a creditor."). Plaintiffs' argument that Count I asserts an individual claim because the majority oppressed the Carson Trust fails because Count I does not assert a claim for minority oppression.

■ Because Count I asserts a derivative cause of action, the complaint must comply with the demand requirement of Federal Rule of Civil Procedure 23.1. Rule 23.1 requires that the complaint "allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary under the applicable law, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort." The Carson Trust, however, may sue without first making a demand "if the shareholder can show his case is exceptional or, in other words, that demand would be a futile, useless exercise." *Franklin Sav. Corp. v. U.S.*, 970 F.Supp. 855, 862 (D.Kan.1997). While the plaintiffs failed to plead specifically in Count I that a demand would have been futile, the facts alleged throughout the complaint make it clear that it would have been futile for the Carson Trust to make a demand of the board of managers. Plaintiffs allege in their complaint that subsequent to Lynch Multimedia filing a lawsuit against Carson Communications, the Carson Trust had no influence over or input into the decisions of the board and that Lynch Multimedia deliberately oppressed the Carson Trust. The Carson Trust, therefore, did not need to make a demand of the board of managers before filing this lawsuit.

■ Mr. Gabelli argues that even if he owed a fiduciary duty to CLR, the plaintiff's claim fails because the actions taken by the board of managers are protected by the business judgment rule. There is little Kansas precedent on the business judgment rule. In *Sampson v. Hunt*, 233 Kan. 572, 585, 665 P.2d 743 (1983), the Kansas Supreme Court explained that "courts will generally not interfere on behalf of a dissatisfied stockholder with the discretion of the directors on questions of corporate management, policy or business." While Kansas apparently follows the business judgment rule, Kansas case law does not flesh out the rule, including under what circumstances the rule protects the judgment of directors. "Kansas courts have a long history, however, of looking to the decisions of the Delaware courts involving corporation law, as the Kansas Corporation Code was modeled after the Delaware Code." *Arnaud v. Stockgrowers State Bank of Ashland*, 268 Kan. 163, 165, 992 P.2d 216, 218 (1999). The defendants' argument lacks merit because Delaware law makes it clear that the business judgment rules presupposes that the "directors act on an informed basis and in the honest belief they acted in the best interest of the corporation." *Krim v. ProNet, Inc.*, 744 A.2d 523, 527 (Del.Ch.1999). The complaint alleges that the actions that constitute a breach of fiduciary duty "were taken for reasons wholly unrelated to the business of CLR." The business judgment rule, therefore, is not a basis for Count I to be dismissed.

### B. Count II & III, tortious interference with contract

Count II of the complaint alleges that Mr. Gabelli "intentionally and without any legitimate purposes, through Mr. Dolan, Mr. Hurwich and Ms. Carroll, exercised improper pressure and influence on the decision making process of the Managers and procured CLR's breach" of its contract with Mr. Carson retaining him as president and general manager. Count III alleges the same with respect to the

management agreement and vehicle lease agreement between CLR and Carson Communications.

Mr. Gabelli argues that the claims should be dismissed because the complaint alleges "no communication of any kind between Mr. Gabelli and anyone employed by CLR LLC with respect to any matter." Mr. Gabelli suggests that to survive a motion to dismiss, a plaintiff must plead that some specific communication between Mr. Gabelli and the board members caused the breach. Mr. Gabelli's argument is without merit. To state a claim for tortious interference with contract under Kansas law, the plaintiffs must plead five elements: (1) the contract; (2) the wrongdoer's knowledge thereof; (3) his or her intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom. *Dickens v. Snodgrass, Dunlap & Co.*, 255 Kan. 164, 169, 872 P.2d 252 (1994). The complaint alleges that the three directors appointed by Lynch Multimedia are employees of Lynch Interactive, that Mr. Gabelli is chairman of the board and CEO of Lynch Interactive, and that Lynch Multimedia is a wholly owned subsidiary of Lynch Interactive. Counts II and III allege that Mr. Gabelli intentionally "exercised improper pressure and influence" on the three managers to procure the breach of the contracts. The facts alleged in the complaint are sufficient to plead the element of intentional procurement of the breach. To survive a motion to dismiss, plaintiffs need not allege that a specific communication by Mr. Gabelli procured the breach of the contracts. None of the cases cited by Mr. Gabelli suggest otherwise.

Mr. Gabelli also argues that the claims should be dismissed because the complaint fails to allege that Mr. Gabelli engaged in "intentional misconduct." "Intentional misconduct" is an element of tortious interference with a prospective business advantage or relationship, not tortious interference with an existing contract. *Turner v. Halliburton Co.*, 240 Kan. 1, 12, 722 P.2d 1106 (1986). Counts II and III state a claim for tortious interference with three existing contracts. To state a claim, therefore, the plaintiffs must plead absence of justification, not intentional misconduct. The complaint alleges that Mr. Gabelli and the managers acted "in an attempt to harm the plaintiffs" as reprisal for Carson Communication allegedly taking a CLR business opportunity, that Mr. Gabelli acted "without any legitimate business purpose," and the actions "were taken for reasons wholly unrelated to the business of CLR." The complaint sufficiently pleads the element of absence of justification.

## C. Count V, civil conspiracy

Count V of the complaint alleges that defendants Dolan, Hurwich, Carroll and Gabelli "intentionally conspired in an attempt to harm the plaintiffs because of the dispute between the parties involving the federal court lawsuit" over whether Carson Communications, the Carson Trust, and Robert Carson took a business opportunity belonging to CLR in breach of their fiduciary duty. According to Count V, the four defendants "committed several overt acts in the course of their breach of fiduciary duties owed and of the minority oppression of Lynch Multimedia."

To state a claim for civil conspiracy under Kansas law, a plaintiff must allege facts sufficient to establish five elements: (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds in the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof. *Vetter v. Morgan*, 22 Kan.App.2d 1, 8, 913 P.2d 1200 (1995) (citing *State ex rel. Mays v. Ridenhour*, 248 Kan. 919, 927, 811 P.2d 1220 (1991)). In addition, a civil conspiracy claim is not actionable without the commission of a wrong giving rise to a cause of action independent of the conspiracy claim. *See Mays*, 248 Kan. at 927, 811 P.2d 1220.

Mr. Gabelli argues that Count V should be dismissed because the complaint fails to

allege that the defendants committed a wrong that would support a cause of action independent of the conspiracy claim. The foundation for Mr. Gabelli's argument is that the breach of contract, breach of fiduciary duty, and minority oppression claims fail as a matter of law. Because these claims are not dismissed for failure to state a claim, the plaintiffs have pled the commission of wrongs that give rise to three causes of action independent of the conspiracy claim.

■ Mr. Gabelli also argues that Count V should be dismissed because the plaintiffs fail to plead any facts that show a "meeting of the minds" between the alleged co-conspirators. Mr. Gabelli relies on this court's opinion in *Sheldon v. Vermonty*, 53 F.Supp.2d 1157, 1169 (1999). In *Sheldon*, this court held that because the plaintiff did not "plead any facts to support his theory that the various defendants agreed to commit the wrongs alleged" or "facts indicating that any defendant engaged in concerted action with any other defendant to accomplish an unlawful act" that the plaintiff failed to state a claim for civil conspiracy. *Id.* The complaint in *Sheldon* pled nothing but conclusory statements. The plaintiffs' complaint, on the other hand, alleges sufficient facts to survive a motion to dismiss. According to the complaint, the three directors appointed by Lynch Multimedia are employees of Lynch Interactive, Mr. Gabelli is chairman of the board and CEO of Lynch Interactive, and Lynch Multimedia is a wholly owned subsidiary of Lynch Interactive. The complaint alleges that as a consequence of the 1999 Lynch Multimedia lawsuit against Carson Communications, the three CLR board members appointed by Lynch Multimedia, "at the behest of Mr. Gabelli", undertook "a conscious course of conduct, as evidenced by the recent decisions that they have made as described in Paragraphs 33 through 47 herein, for the sole purpose of furthering their own and/or Mr. Gabelli's personal agenda, which is a result of activities associated with the federal lawsuit filed by Lynch Multimedia." Paragraphs 33 through 47 detail CLR board actions, subsequent to Lynch Multimedia filing the lawsuit, that sever all ties with Robert Carson and Carson Communications. The plaintiffs have pled sufficient facts indicating that the alleged co-conspirators had a "meeting of the minds." To require anything more would be to require more than the liberal notice pleading of Rule 8(a).

### D. Count VI, defamation

■ Count VI of the complaint alleges that Mr. Gabelli "published statements and omissions about Mr. Carson" in the Lynch Interactive 1999 Annual Report "with knowledge of the falsity of the statements and/or reckless disregard as to their truth or falsity." Count VI further alleges that as a "direct and proximate result of the defamation, Mr. Carson has been damaged."

Mr. Gabelli argues that the plaintiffs failed to adequately allege that the annual report contained false statements. The complaint alleges in paragraph 57 that the report is "false, misleading, and defamatory" in eight respects. For example, the complaint quotes the report as stating, "We have sued Carson and related parties claiming that the properties opportunity was diverted from and belongs to CLR. Bob denies our claims and the case is scheduled to go to trial this summer. Why would we not want to buy cable properties?" The complaint alleges that the report is false because it "fails to disclose that Mr. Gabelli and Lynch refused to allow CLR to purchase the properties at issue, despite Mr. Carson having offered them to CLR over a period of numerous months." The report, as quoted, plainly implies that Mr. Carson did not offer the opportunities to CLR.[3] The complaint,

---

**3.** Read in the context of the rest of the report, there is no doubt that the report implies that Mr. Carson did not offer the opportunity to CLR. The report quotes the 1999 Annual Report of the Berkshire Hathaway Corporation praising a manager as selfless and honorable and then, in contrast, tells "Lynch's version of

therefore, adequately alleges that the report contains a false statement.[4] See *Sellars v. Stauffer Communications, Inc.*, 9 Kan.App.2d 573, 580, 684 P.2d 450 (1984) ("A defendant should not be able to negligently defame a private person simply by implying [something false]."); David M. Cohen, *The Problem of Indirect Defamation: Omission of Material Facts, Implication, and Innuendo*, 1993 U. Chi. Legal F. 233 (1993) ("A factually correct article may omit or falsely imply a material fact that makes the article just as harmful as a blatantly false report.").

Mr. Gabelli also argues that the defamation claim should be dismissed for failure "to allege facts to support his conclusory allegation of damages." For support, Mr. Gabelli cites two Kansas decisions discussing what is needed to survive summary judgment and for proof at trial. Neither case is applicable and the claim that a plaintiff must plead facts that show damage to reputation to survive a motion to dismiss is without support in Kansas law. Case law cited by Mr. Gabelli in his reply stands for the proposition that a plaintiff must prove actual damages at trial and, following *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), may no longer recover presumed damages on the theory of slander per se. The plaintiffs allege actual damages in the complaint and do not seek recovery of presumed damages on the theory of slander per se. Mr. Gabelli's argument, therefore, is without merit.

### E. Count VII, false light publicity

Count VII of the complaint alleges that the statements in the annual report "constitute an invasion of Mr. Carson's right of privacy and have placed Mr. Carson before the public in a false light of a kind highly offensive to an ordinary person." Mr. Ga-

belli argues that the complaint fails to sufficiently allege that the report contains false statements and that it fails to allege that the report was " 'publicized.' " For the reasons already given, the complaint adequately alleges that the report contains a false statement.

■ The complaint also adequately alleges the element of publicity. In *Dominguez v. Davidson*, 266 Kan. 926, 937, 974 P.2d 112 (1999), the Kansas Supreme Court adopted the definition of publicity set out by this court in *Ali v. Douglas Cable Communications*, 929 F.Supp. 1362, 1382 (D.Kan.1996). In *Ali*, this court explained that publicity "means that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Ali*, 929 F.Supp. at 1382. The complaint pleads that the allegedly false statements were published in Lynch Interactive's 1999 Annual Report, a publicly traded company.[5] A reasonable person could certainly conclude that the facts alleged in the complaint show that the report was "publicized" as the term is defined by the *Ali* decision. The claim, therefore, should not be dismissed on the basis of the pleadings.

■ Mr. Gabelli also argues that the complaint fails to "set forth any allegation of mental suffering or emotional distress, another necessary element of a false light claim." In Kansas, a plaintiff may recover for false light publicity if the defendant "gives to another publicity which places him before the public in a false light of a kind highly offensive to a reasonable man." *Dominguez*, 266 Kan. at 937, 974 P.2d 112. There is no requirement that the plaintiff plead mental suffering or emotional dis-

---

the story" where Lynch sues Mr. Carson for taking a business opportunity without offering it to CLR.

**4.** The distinction between making a false statement and saying that the plaintiff denies a false statement but is obviously lying,

should not make one publication actionable and the other fall outside of the scope of defamation.

**5.** The report, therefore, was distributed to all shareholder and filed with the Securities Exchange Commission ("SEC").

tress specifically. The plaintiffs' allegation that Mr. Carson was damaged as a result of the false light publicity is sufficient.

## IV. Defendants Robert Dolan, Robert Hurwich, Mary Carroll, Lynch Interactive Corporation and Lynch Multimedia Corporation's motion to dismiss

### A. Count I, breach of fiduciary duty and Count IV, minority oppression

■■ The defendants argue that because the Kansas revised limited liability company act provides that no member or manager is liable for debts or obligations of an LLC, managers may not be sued for breach of fiduciary duties or minority oppression. Any remedy for breach of fiduciary duties or minority oppression, according to the defendants, must be created by the operating agreement. The defendants' argument is without merit. The Kansas act does not create manager immunity for breach of fiduciary duties or minority oppression. In fact, section 17–76,134(c) recognizes that a manager or member may owe fiduciary duties and allows the operating agreement to expand or restrict those duties. The complaint does not allege that the defendant managers are liable for debts or obligations incurred by CLR. Instead, the complaint alleges that the managers are liable to the Carson Trust and CLR for breaching their fiduciary duty to act in the best interest of CLR.

### B. Count V, civil conspiracy

■■ Defendants argue that because the complaint alleges that the defendant managers all acted in the interests of "the Lynch entities," the defendants cannot commit a conspiracy. In essence, the defendants' argument is that Mr. Gabelli and the three managers were all acting on behalf of the same entity· and a single entity cannot commit a conspiracy. Defendants cite a decision by this court holding that "under Kansas law employees working in their corporate capacity and not for their individual advantage cannot conspire

with each other because their conduct is actually attributable to one entity." *Butler v. City of Prairie Village*, 961 F.Supp. 1470 (D.Kan.1997). *Butler* is easily distinguishable because, in this case, the managers were not acting solely in their capacity as employees of Lynch Interactive, but were also acting or under a·duty to act as agents of CLR. It is because the complaint alleges that the defendant managers were acting as agents of Lynch Interactive and not solely in the interest of CLR that the complaint states a cause of action. Because the complaint further alleges that the managers conspired to act as agents of Lynch Interactive and not solely in the interest of CLR, the complaint also states a cause of action for conspiracy.

### C. Count VI, defamation

Defendants argue that the defamation claim must be dismissed because the complaint fails to plead that the annual report contains a false statement and failed to plead actual damages. For the reasons set out earlier, these arguments are without merit.

### D. Count VII, negligent defamation

■■ Defendants argue that Kansas does not recognize a cause of action for negligent defamation "against a nonmedia defendant." Defendants cite P.I.K.3d 127.52 which provides a jury instruction for negligent defamation. The comment to the instruction cites *Gobin v. Globe Publishing Co.*, 216 Kan. 223, 531 P.2d 76 (1975) for the proposition that a "private individual (one not a public official or a public figure) may recover damages for defamation by a media defendant based upon negligent publication of the defamatory statement." P.I.K.3d 127.52 cmt. Neither the instruction nor the comment says that recovery for negligent defamation is limited to media defendants, and the *Gobin* decision does not stand for that proposition. The defendant in *Gobin* was a media defendant and the holding, therefore, was specific to media defendants.

While Kansas precedent explains generally that private plaintiffs may recover for negligent defamation, see *Ruebke v. Globe Communications Corp.*, 241 Kan. 595, 598, 738 P.2d 1246 (1987) and *Sellars v. Stauffer Communications*, 9 Kan.App.2d 573, 575, 684 P.2d 450, the defendants in those cases also happened to be media defendants. General legal principals, however, clarify that a plaintiff may recover for negligent defamation against private defendants as well as media defendants. *See* Restatement (Second) of Torts § 580B & cmt. g (1977) (explaining that "customs of the community as a whole" may be relevant to determining whether an "ordinary citizen" negligently defamed a plaintiff). Nothing in Kansas case law suggests otherwise. Count VII, therefore, states a valid cause of action.

### E. Count VIII, false light publicity

 Defendants again argue that plaintiffs failed to plead that the statements in the annual report were false, that the plaintiffs failed to sufficiently plead damages, and that the annual report was not "publicized." All three arguments are without merit, as explained earlier. Defendants also ask the court to dismiss the pleadings for failure to state a claim on the grounds that the facts pled do not constitute an action that is highly offensive to a reasonable person. Defendants cite no case law in support of their argument that the statements made are not highly offensive. The complaint alleges that Mr. Gabelli and Lynch Interactive published in the 1999 Lynch Interactive annual report a false allegation that Mr. Carson and Carson Communications stole a business opportunity of CLR. The complaint also alleges that the report, by comparing Mr. Carson to the "selfless and honorable business managers" of Berkshire Hathaway Corporation, implies that Mr. Carson "does not have the same personal and professional qualities as the Berkshire Hathaway managers." Kansas recognizes a claim for false light publicity under section 652E of the Restatement. *See Werner v. Kliewer*, 238 Kan. 289, 293–94, 710 P.2d 1250 (1985). According to the comments to section 652E, a statement is highly offensive when there is a "major misrepresentation" of a plaintiff's "character, history, activities or beliefs" so that "serious offense may reasonably be expected to be taken by a reasonable man in his position." Restatement (Second) of Torts § 652E cmt. c (1977). On the other hand, the comments explain, "minor errors, such as a wrong address for his home, or a mistake in the date when he entered his employment or similar unimportant details of his career, would not in the absence of special circumstances give any serious offense to a reasonable man." *Id.* This court cannot say as a matter of law that a reasonable person would not be seriously offended by the statements published in the 1999 Lynch Interactive annual report about Mr. Carson's character and alleged fraudulent activities. Dismissal on that basis, therefore, is inappropriate.

**IT IS THEREFORE ORDERED BY THE COURT THAT** the motions to dismiss by defendant Mario Gabelli (Doc. 25) and defendants Robert Dolan, Robert Hurwich, Mary Carroll, Lynch Interactive Corporation and Lynch Multimedia Corporation (Doc. 22) are denied.